UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| DAVID A. HENSLEY,<br><br>    Plaintiff,<br><br>V.<br><br>DIMENSION SERVICE CORPORATION et al.,<br><br>    Defendants. | CIVIL ACTION NO. 5:24-CV-378-KKC<br><br>**<u>OPINION & ORDER</u>** |

*** *** ***

This matter is before the Court on the Defendants' motion to dismiss (DE 7) and the Plaintiff's motions for leave to file an amended complaint (DE 10) and for an extension of time to file a reply (DE 14).

### I. Factual Background

David Hensley owns a cell phone that is on the National Do Not Call Registry (the "DNC"). Between July 2024 and September 2024, Hensley received approximately 100 phone calls from unknown numbers. When those calls went unanswered, voicemails with odd background noises would be left. When Hensley answered those calls, he was met with an electronic blip sound and was transferred to a salesperson.

Hensley answered one such phone call in September 2024 and purchased a vehicle service contract (the "Contract") from the salesperson he was connected to. The Contract identified Pelican Investment Holdings, LLC ("Pelican") as the seller, Sing for Service, LLC ("SING") as the payment plan provider, and National Administrative Service Co., LLC ("NAS") as the administrator and obliger. Hensley then cancelled the Contract and filed this lawsuit, naming as defendants Pelican, SING, NAS, and Dimension Service Corporation

1

("Dimension")[1] (together, the "Defendants"). Hensley's claims arise from the unwanted phone calls described above, which he claims were made or caused to be made by the Defendants.

## II. Standard of Review

The Defendants filed a Rule 12(b)(6) motion to dismiss in January 2025. While that motion was pending, Hensley filed a motion for leave to file his First Amended Complaint ("FAC") to correct the alleged deficiencies in the original complaint. (DE 10.) The Defendants responded, arguing that Hensley's proposed FAC is futile. (DE 13.) Hensley then filed a motion for an extension of time to file a reply to that response (DE 14), which the Court will now grant, and subsequently filed a reply (DE 17) addressing the Defendants' arguments.

Generally, the Court freely grants leave to amend complaints. Fed. R. Civ. Pro. 15(a). When plaintiffs seek to amend in the face of a pending Rule 12(b)(6) motion, however, they must show that the proposed amendment will change the outcome of the pending motion. *See Young v. Overly*, No. 17-6242, 2018 WL 5311408, at *4 (6th Cir. July 2, 2018) (citing *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 (6th Cir. 2014)). Similarly, under the futility rule, the Court will deny a motion for leave to file an amended complaint if it concludes that the amended pleading could not withstand a motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("[a] proposed Amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion,") (citation omitted). Accordingly, the Court will determine whether Hensley's proposed FAC can withstand a Rule 12(b)(6) motion to dismiss.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient

---

[1] Dimension is ostensibly named because it shares an address with NAS, and NAS's Better Business Bureau website link directs users to Dimension's home page. Otherwise, Hensley's proposed amended complaint makes no factual allegations as to Dimension's conduct.

to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir.2011) (quoting *Iqbal*, 556 U.S. at 677). Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quotation omitted).

### III. Analysis

#### A. The Telephone Consumer Protection Act

Hensley alleges in the FAC that each of the Defendants are liable for violations of the Telephone Consumer Protection Act ("TCPA") for (1) making calls to his cell phone using a prerecorded message (in violation of 47 U.S.C. § 227(b)(1)(A)(iii)); (2) making calls to his cell phone using an automatic telephone dialing system ("ATDS") (in violation of 47 U.S.C. § 227(b)(1)(A)(iii)); and (3) making calls to his cell phone because his number was registered on the DNC registry (in violation of 47 U.S.C. § 227(c)(5)).

##### i. Whether Hensley pleads facts sufficient to state a claim of direct or vicarious liability against each defendant.

The Defendants first argue that Hensley's proposed FAC is futile because it fails to plead facts sufficient to state a claim for a TCPA violation under any theory of liability— whether direct or vicarious—against any defendant. For the following reasons, the Court finds that (1) Hensley pleads sufficient facts to state a TCPA claim under a direct or vicarious liability theory against Pelican; and (2) Hensley fails to plead sufficient facts to state a TCPA claim under either a direct or vicarious liability theory against NAS, SING, or Dimension.

3

The Defendants acknowledge that liability for violations of Section 227 of the TCPA may be based upon a theory of direct or vicarious liability. "[F]ederal common law principles of agency," guide the Court's evaluation of vicarious liability under the TCPA. *Imhoff Invest., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015). A "formal" agency relationship is not required. *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371 (6th Cir. 2015). Instead, defendants may be held vicariously liable for TCPA violations "under a broad range of [federal common-law] agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id.* (quotation omitted). The Court will thus consider the sufficiency of the FAC's factual pleadings with respect to each defendant.

The Defendants specifically argue that the FAC fails to state a claim of direct or vicarious liability against any of them because it "lumped all Defendants together, failing to distinguish between the alleged wrongful conduct of any of the named Defendants." (DE 13 at 8.) As a result, the Defendants assert that Hensley fails to connect any of them, or their agents, to the offending phone calls.

The Defendants overstate their position. Consider the factual allegations in the FAC specific to Pelican. The FAC states that during the last call Hensley received, an automated system connected him to a Pelican salesman from whom he agreed to purchase a vehicle service contract. (DE 10-1 at ¶51.) This allegation alone allows the Court to draw the reasonable inference that Pelican is either directly or vicariously liable for that phone call and other similar phone calls Hensley claims he received. *See Iqbal*, 556 U.S. at 677.

As to the rest of the defendants, however, the Court agrees that the FAC fails to state a claim of direct or vicarious liability against them. For one, the FAC does not allege that NAS, SING, or Dimension were directly responsible for the offending calls. Thus, though the FAC does not say so in express terms, Hensley's theory must be that those defendants are

4

vicariously liable for the offending calls as principals of either Pelican or some other entity responsible for the calls.

To that effect, Hensley claims that NAS and SING are connected to the offending calls on account of the Contract identifying (1) NAS as the administrator and obligor of the policy; and (2) SING, doing business as Mepco, as the assignee of the policy. Yet Hensley's FAC fails to allege facts which demonstrate (1) an agency relationship between either NAS or SING and Pelican or some other entity responsible for the calls; or (2) any viable vicarious liability theory upon which NAS or SING could be held liable.

First, and most importantly, the FAC fails to allege facts demonstrating that NAS or SING had an agency relationship with any entity which would have allowed them to direct the offensive conduct. The Sixth Circuit looks to the Restatement of Agency to determine federal common law principles of agency. *Keating*, 615 Fed.Appx. at 373. And the Restatement posits that for a plaintiff to succeed under any agency dogma, they must first establish the underlying principal-agent relationship. *See* Restatement (Third) of Agency, § 1.01 cmt. c (2006) ("the concept of agency posits a consensual relationship in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person."). Hensley *does* allege in the FAC that the "Defendants acted in concert with each other under a common business plan." (DE 10-1 at ¶40.) But this falls short of alleging sufficient facts to establish an agency relationship. Simply engaging in business together is insufficient to establish the sort of bedrock agreement present in every agency relationship in which one person agrees with another to act on behalf of the other "with power to affect the legal rights and duties of the other[.]" *See* Restatement (Third) of Agency, § 1.01 cmt. c.

Even if the FAC included sufficient facts to allege an agency relationship between NAS or SING and Pelican or some other entity responsible for the calls, it fails to allege facts

5

sufficient to succeed on any theory of vicarious liability. For one, the FAC does not allege that either NAS or SING directed the calls to be made (i.e., an actual authority theory). Moreover, the FAC does not allege that any caller ever presented themselves as an agent of either NAS or SING (i.e., an apparent authority theory), nor does it allege that NAS or SING knew of and approved of the phone calls (i.e., a ratification theory).

With respect to Dimension, the Court notes the FAC's failure to allege any facts connecting it to the offending calls. Rather, Hensley seems to only connect Dimension to the alleged TCPA violations by pleading that NAS and Dimension are related entities. This allegation, without more, is insufficient to establish a theory of direct or vicarious liability against Dimension, especially in light of the Court's findings regarding NAS and SING above.

Based on the foregoing, the Court will dismiss the TCPA claims against NAS, SING, and Dimension, but it will proceed with other arguments pertaining to the dismissal of TCPA claims against Pelican.

### ii. Whether Hensley pleads sufficient facts regarding the substance of the offending calls to state Section 227 TCPA claims.

Pelican next argues that Hensley's proposed FAC fails to provide sufficient detail regarding the alleged phone calls to state Section 227 TCPA claims. Pelican does not specify whether this argument applies to Hensley's Section 227(b) claims or his Section 227(c) claim. Nevertheless, the argument fails as to each of Hensley's Section 227 claims.

Section 227(b) states, in relevant part, that "it shall be unlawful for any person . . . to make a call . . . using any [ATDS] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). "Pleading a prerecorded message is a low bar." *Chapman v. Nat'l Health Plans & Benefits Agency, LLC*, 619 F. Supp. 3d 788, 796 (E.D. Mich. 2022). But courts have required plaintiffs to provide *some* details describing the prerecorded message. *Aikens v. Synchrony Financial*, No. 15-

6

10058, 2015 WL 5818911, at *4 (E.D. Mich. July 31, 2015) ("it is entirely reasonable to demand that plaintiffs provide sufficient information about the timing and content of the calls they receive to give rise to the reasonable belief that an ATDS was used."). In *Reo v. Caribbean Cruise Line*, for example, the court found that the plaintiff provided insufficient detail because "[t]here is no description of the content of the calls (or texts) and no information regarding the frequency of the calls or why they believed that an . . . 'artificial or prerecorded voice' was used such as a period of 'dead air' after answering a call or the inability to interrupt a message or to talk to a human being." No. 1:14 CV 1374, 2016 WL 1109042, at *4 (N.D. Ohio Mar. 18, 2016).

Here, Hensley provides a sufficient level of detail in the FAC such that he plausibly alleges that Pelican used a prerecorded voice or an ATDS in its calls to him. The FAC includes allegations that (1) unanswered calls "resulted in identical prerecorded voice mails that consisted of **odd background noises**," and (2) answered calls began with an "**electronic blip sound** and a **pause**," before connecting him to a salesperson "attempting to sell Mr. Hensley a vehicle warranty." (DE 10-1 at ¶¶44, 46) (emphasis added.) Unlike the plaintiff in *Reo*, Hensley sufficiently describes why he believes an ATDS or prerecorded voice was used.

The same result follows for Hensley's Section 227(c) claim. A plaintiff states a claim for relief under Section 227(c) of the TCPA when they allege facts demonstrating that they (1) received more than one telephone call within any 12-month period; (2) by or on behalf of the same entity; and (3) the calls constituted "telephone solicitations" to a number that is on the DNC. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Though Pelican's briefing on this issue is neither precise nor clear, its argument must be that Hensley's claim fails because the proposed FAC does not describe the content of the calls in enough detail to establish that the calls were "solicitations." The TCPA defines a solicitation as "the initiation of a telephone call . . . [to encourage] the purchase or rental of . . . property, goods, or services."

7

Taking the allegations in the light most favorable to Hensley, as the Court must at this stage, the proposed FAC states a claim under Section 227(c) of the TCPA against Pelican. Taken together, allegations in the proposed FAC assert that Pelican called Hensley multiple times over a three-month period, and that when he answered, he was connected to a Pelican salesperson who attempted to sell him a vehicle service warranty. (DE 10-1 at ¶46.) On these facts, the Court finds that that Hensley plausibly pled a § 227(c) violation, regardless of the fact that he did not describe the content of each call in precise detail.

### B. The Kentucky Consumer Protection Act

Hensley also alleges in the FAC that each of the Defendants violated various sections of the Kentucky Consumer Protection Act ("KCPA"). Because Hensley bases his KCPA claims on the same conduct at issue in his TCPA claims, the Court will dismiss the KCPA claims to the extent they are alleged against NAS, SING, and Dimension for the same reasons stated above. This leaves the Court to consider Pelican's arguments, which the Court recognizes were made common to all Defendants, in favor of dismissal.

Pelican argues that the FAC is futile because Hensley claims he received the offending calls on his cell phone, which is not a "residential number within the meaning of the . . . KCPA." (DE 13 at 9.) According to Pelican, "the KCPA does not offer a definition of residential phone, but other portions distinguish between residential and 'mobile' phones." (*Id.*)

Pelican's argument fails as a matter of law. Hensley alleges that Pelican violated various portions of KRS 367.46955. And contrary to Pelican's argument, KRS 367.46955 does not require calls to be received on a "residential phone." Rather, the statute makes clear that violations of KRS 367.46955 may occur when calls are received by a consumer on their mobile phone. *See* KRS 367.46951(a) (providing definitions for KRS 367.46955 and defining a "telephone solicitation"—which is the triggering event in a potential KRS 367.46955 violation—as a "communication sent by a telephone . . . **to** a residential, **mobile**, or telephone

8

paging device telephone number[.]" (emphasis added). For this reason, Pelican's argument fails and Hensley's KCPA claims against Pelican will not be dismissed.

### C. Invasion of Privacy

Hensley finally alleges in the FAC that each of the Defendants are liable for the tort of invasion of privacy. Again, because Hensley bases his invasion of privacy claim on the same conduct at issue in his TCPA claims, the Court will dismiss the invasion of privacy claim to the extent it is alleged against NAS, SING, and Dimension for the same reasons stated above.

In his proposed FAC, Hensley identifies an "intrusion upon seclusion" theory to support his invasion of privacy claim. To prevail under that theory, Hensley must show (1) an intentional intrusion by Pelican, (2) into a matter that he has a right to keep private, and (3) that Pelican's intrusion would be highly offensive to a reasonable person. *See Wiles v. Ascom Transp. Sys., Inc.*, 478 Fed.Appx. 283, 293–94 (6th Cir. 2012) (applying Kentucky law). Pelican argues that Hensley's FAC is futile because it fails to include facts which could show that it intruded on any matter about which Hensley had a right to keep private.

The Court finds that the FAC fails to state an invasion of privacy claim based on an intrusion upon seclusion theory. Put plainly, Hensley fails to identify a private matter which Pelican intruded on—which is essential to Hensley's claim. *See Wiles*, 478 Fed.Appx. at 293–94. Rather, the FAC's allegations under the invasion of privacy claim include mere "conclusions, and a formulaic recitation of the elements of a cause of action," which are insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

Hensley cites several authorities to support the proposition that Pelican's "unwanted calls in and of themselves constitute[d] an invasion of Mr. Hensley's right to be left alone." (DE 17 at 16.) The authorities cited, however, are non-binding cases not applying Kentucky law. Thus, in light of (1) the requirement under Kentucky law to identify a private matter

9

which was intruded upon; and (2) Hensley's failure to identify any private matter in his proposed FAC, the Court will dismiss Hensley's invasion of privacy claim.

### IV. Request to file Second Amended Complaint

Hensley requests leave to file a second amended complaint should the Court conclude that his FAC fails to state a viable claim against the Defendants. The Court will deny that request at this juncture. Hensley neither tendered a second amended complaint nor offered an explanation as to how he may further amend his complaint. Without that necessary context, the Court cannot opine on Hensley's entitlement to further amendments.

### V. Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows

(1) the Defendants' motion to dismiss (DE 7) is DENIED as moot;

(2) Hensley's motion to file his proposed First Amended Complaint (DE 10) is GRANTED in part and DENIED in part as follows:

   a. Hensley's motion is GRANTED insofar as it alleges claims under the TCPA and KCPA against Pelican;

   b. Hensley's motion is DENIED as futile insofar as it alleges claims under the TCPA and KCPA against NAS, SING, and/or Dimension, and those claims are therefore DISMISSED; and

   c. Hensley's motion is DENIED as futile insofar as it alleges a claim for invasion of privacy against all Defendants, and that claim is therefore DISMISSED; and

(3) Hensley's motion for an extension of time (DE 14) is GRANTED.

This 13th day of June, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY