# Pelican Investment Holdings

**("Pelican")**

**_____**

# Telemarketing Compliance Policy Manual

**_____**

**I.     INTRODUCTION AND PURPOSE**
**II.    APPLICABILITY AND SCOPE**
**III.   SUMMARY OVERVIEW**
**IV.    MARKETING AND DUAL-PURPOSE CALLS**
**V.     INFORMATION ONLY CALLS**
**VI.    BEST PRACTICES FOR IMPROVED CUSTOMER EXPERIENCE**
**VII.   PRE- AND POST-CALL OBLIGATIONS**
**VIII.  EMAIL RULES**
**IX.    MONITORING**
**X.     APPENDICES**

## Definitions

| | |
|---|---|
| Calling Window | The time period that outbound telemarketing calls can be made. |
| Campaign | The specific offer we call consumers about for a client. |
| Compliance | Refers to following all required laws, regulations and operating guidelines. |
| DNC | Do Not Call lists – Businesses must place a consumer on Do Not Call lists if the consumer asks not to receive any further solicitations. |
| Established business relationship | An exception to the National Do Not Call List. An Established Business Relationship refers to the businesses or companies that consumers do business with |
| FCC | Federal Communications Commission – a U. S. government agency established to regulate interstate and international communications. |
| FTC | Federal Trade Commission – a U.S. government agency established to ensure that the nation's markets are vigorous, efficient and free of restrictions that harm consumers. |
| National DNC Registry | A nationwide do not call list that applies to all telemarketers, with certain exceptions. |
| No Rebuttal States | States that require a telemarketer to end the call without offering a rebuttal if the customer expresses a hard objection. |
| Permission to Continue States | States that require telemarketers to ask for permission to continue with their sales presentation. |
| Scrub | Refers to the removal of names or numbers from a calling list. |
| Suppression | Suppression is the act of preventing leads from being called. Suppression programs detail how individual names and phone numbers are maintained and removed from calling programs. |
| TCPA | Telephone Consumer Protection Act of 1991 – the act addresses concerns about unsolicited telemarketing calls and the increasing use of automated and prerecorded telephone calls. |

| TSR | Telemarketing Sales Rule the FTC enacted in 1995. The Rule prohibits deceptive and abusive telemarketing acts and practices. |
| Verbatim scripts | Scripts that must be recited word for word on calls. |

Pelican_00003

## I.    INTRODUCTION AND PURPOSE

*For ease of reading, Pelican Financial Holdings has been abbreviated to "Pelican" throughout the telemarketing compliance manual.*

Regulation of telemarketing and telephone solicitation practices has grown increasingly important over the years.

Compliance with these federal and state requirements is essential if we are to maintain our reputation as a customer-focused company and provide our customers and potential customers with a positive and welcome customer experience.  Further, failure to comply with these requirements can significantly impact our ability to market via telephone and expose Pelican to serious fines as well as individual and class action lawsuits.

The purpose of this Policy is to identify the various federal and state requirements for telephone solicitation that apply to Pelican and to delineate the standards and practices that individual business units and employees must maintain in order to ensure Company operations continue to comply with them.  The Policy will serve as a framework for all departments that engage in telemarketing activities to maintain appropriately compliant procedures or to develop new ones as business practices or legal requirements evolve.

## II.  APPLICABILITY AND SCOPE

This Policy applies to all telemarketing, telephone solicitation and email communication activities engaged in by employees of Pelican on behalf of Pelican.  As currently adjudicated under federal law, the terms telemarketing and telephone solicitation may be considered synonymous in this policy and mean the following:

> ***The active attempt to communicate by voice with an individual using their home or personal wireless device for the purpose of inducing the purchase of any good or service. This includes communications of a dual-purpose nature, in which the inducement to purchase element is included with other non-commercial information but does not include purely informational calls or calls made for non-commercial purposes.***

Some examples of calls that would be considered telemarketing calls under the above definition are provided below:

- A direct sales agent calling a lead to offer Company products or services.
- A customer service representative contacting a customer to answer a question, and then offering information about a new product or service.

**It is essential that employees understand that any outbound call they make that encourages a customer or potential customer to buy a product or service we offer, even in part, constitutes telemarketing under the law.**  Employee actions and business plans must be guided accordingly.

Pelican_00004

Unless the context requires otherwise, all references to "Pelican", "Pelican Investment Holdings.", "Company" in this Policy apply to:

- Pelican Investment Holdings, LLC

This Policy applies to all Pelican personnel, including full- and part-time employees, as well as independent contractors, temporary workers and other third parties and their staff that are hired by Pelican on a temporary basis as non-employees to provide consumer contact services. The Legal and Procurement areas shall be responsible for adding provisions to third party vendor contracts requiring these parties to take appropriate steps to comply with the provisions of this policy as well as all applicable federal and state laws.  Failure to adhere to the requirements of this Policy will result in disciplinary action, up to and including termination.

This Policy is designed to ensure compliance with state and federal laws and reflects Pelican's best understanding and interpretation of those rules.  However, this Policy only addresses items that pertain to Pelican compliance practices and should not be construed in any way as providing legal advice on compliance with regulations to any company not affiliated with Pelican.

## III.  SUMMARY OVERVIEW

The application and enforcement of existing federal and state laws on outbound telephone calls is based on the content of the call.  Under these laws, calls fall into one of three categories.

1. **Information Only Calls:**  Calls that provide information about Pelican itself and its products or services.  These calls are usually in response to an inquiry from a prospect, or current customer, and include no content designed to induce the purchase of any products, services Pelican offers current or future.

   Examples would be calls providing information about the status of a loan or Company hours.

2. **Dual-Purpose Calls**—Informational call with a Marketing Objective or Aspect: These are calls that provide general information to the call recipient, either about Pelican or about the recipient's vehicle service contract, but also include the element of providing information about products or services in the attempt to induce a sale or retain/save an account.

3. **Marketing** – Calls placed to a prospects or current customers with the primary objective of making a sale or that include the aspect of providing information about products or services so as to induce a current or future purchase.

   An example of a Marketing call would be a Company sales agent contacting a prospective customer to offer information about Pelican's products and services or provide a quote.

Under existing laws, Marketing and Dual-Purpose calls are subject to a number of requirements and restrictions, while Information Only calls are generally exempt from the majority, but not all, applicable regulations.  Additionally, some federal laws exist on telemarketing that do not apply to the service industry, but nevertheless represent best practices that will improve our current and future customers' experience with our Company.  As such, this Policy is divided into three sections, designed to provide a ready, operational understanding of our compliance obligations:

- **Outbound Marketing and Dual-Purpose Calls** (Section IV)

- **Outbound Information Only Calls** (Section V)

- **Best Practices for All Call Types** (Section VI)

Federal law and regulation requirements are typically included when applicable.  State requirements generally mirror those established by the federal government under the Telephone Consumer Protection Act (TCPA) and Telemarketing Sales Rule (TSR).  However, in some cases these requirements are more restrictive than their federal counterparts, and some states have also established requirements not found in federal law.  These requirements are summarized for management at senior levels to help institute automated restrictions on calls.

It will be Pelican's practice to adhere to federal law in all instances, and the more restrictive parts of state law where additional requirements not found in federal law.  Business units and employees must remember that the **laws of the state where the consumer resides, will apply** to outbound telemarketing calls.

## IV. MARKETING AND DUAL-PURPOSE CALLS

This section outlines our policy for Marketing and Dual-Purpose telephone calls made to both prospective customers and current customers.  Marketing and Dual-Purpose calls include any type of telephone contact, including text messages, initiated by Pelican for the purposes of marketing a new product or service enhancement or any modification that also benefits Pelican financially through the acquisition of new or additional sales.

## A. Required Pre-Call Calibration

### 1. Do Not Call Lists

A Do-Not-Call (DNC) registry consists of a formal list of consumers who indicated that they do not wish to receive telemarketing calls from businesses.  DNC registries exist on the national and state level, and all companies which engage in telemarketing are also required to maintain an internal DNC registry. Consumers may choose to include both their home landline numbers and personal cell phone numbers on a DNC registry.

There are four types of Do Not Call registries:

1. **Federal**

2. **State**
3. **Internal (Company)**
4. **Wireless Device (Cell Phone)**

**Unless exempt, all outbound marketing and dual-purpose calls must be screened against all applicable registries prior to making an outbound call.** Each registry type is discussed in detail below.

## A. Federal Do Not Call Registry

The National DNC Registry (NDNCR) is maintained by the FTC. Registered consumer phone numbers remain on the NDNCR for so long as the telephone number is assigned to the registrant. Registrants do not need to give their name or address when registering by phone or on the FTC's website and there is no charge for an individual to place his/her number on the Registry. Individuals who place their names on the NDNCR can, however, provide specific companies with written permission to call them.

Unless exempt, companies are required to purchase a Subscription Account Number (SAN) and scrub their calling lists at least every 30 days against the NDNCR. **A call is exempt from the TSR/TCPA's DNC provisions if it:**

- **Is made on behalf of a tax-exempt nonprofit organization;**
- **Is not made for a telemarketing** (i.e., marketing) **purpose;**
- **Is made to a consumer with whom the calling company has an Existing Business Relationship; or**
- **Is made to consumer who has provided express written consent.**

The DNC exemptions for Established Business Relationship (EBR) and prior express written consent are discussed in more detail in the following sections.

Pelican uses a third party Do-Not-Call scrubbing service which scrubs all non-exempt outbound telemarketing calls against the NDNCR. Persons making non-exempt telemarketing calls to people whose numbers are listed on the National DNC Registry are subject to fines as high as $40,654 for each violation.

## B. State Do Not Call Registry

Many states have their own DNC laws. These laws either require telemarketers to purchase and scrub against the National DNC Registry or against a separate DNC registry maintained by the state or third party. Several states have EBR rules that are more restrictive than provided under federal regulations; while other states do not provide for an EBR exemption.

Pelican will comply with all state DNC rules and exemptions that are more restrictive than federal regulations. To the extent possible, however, Pelican obtains express

Pelican_00007

written consent to call all consumers. Generally, this eliminates the need to calculate EBRs on a state by state basis and helps facilitate compliance with all federal and state laws. All EBR and express consent leads shall be documented as set forth below in this manual and in accordance with Pelican lead generation policies and procedures, regardless of whether Pelican or a third party generates the lead. The Pelican Compliance Manager and/or legal team is responsible for ensuring express consent and/or EBR exemptions are being met for all campaigns.

## C. Internal Do Not Call Registry

Federal and some state laws also require all companies which engage in telemarketing to maintain an Internal DNC registry for individuals who contact them directly and request to have telemarketing calls from Pelican blocked. As with the National DNC Registry, a company is required to scrub all outgoing telephone solicitations against their Internal DNC registry.

All of the requirements and exceptions pertaining to the NDNCR apply to a company's Internal DNC registry, except for the Established Business Relationship exception. **A customer who has an EBR with a company and requests to be placed on that company's Internal DNC registry may not lawfully be contacted for telemarketing purposes even if they continue to do business with Pelican,** unless they later grant express written consent for the contact.

When a business receives an internal DNC request, the requester must not be called again on behalf of the business for telemarketing purposes. Numbers must be kept on Pelican's Internal DNC registry for five (5) years unless the request is revoked in writing or Pelican obtains documented proof that the phone number has been reassigned to another consumer.

A third-party vendor acting as a telemarketer for Pelican is required to forward all DNC requests it receives to Pelican on whose behalf it is calling. If the third-party telemarketer maintains the DNC registry, the seller on whose behalf the telemarketer places the call will still be subject to liability for any failure to honor a DNC request. The DNC request must also be honored by any affiliate or subsidiary of Pelican if there is a reasonable expectation on the part of the consumer that the request would also apply to the affiliate or subsidiary.

Pelican has established an Internal DNC registry and maintains it to ensure full compliance with all federal and state requirements. All outbound telemarketing calls are scrubbed against the Pelican DNC registry prior to placement. All applicable federal and state rules are adhered to in the use and maintenance of the Pelican internal DNC registry.

## D. Wireless Device (Cell Phone) Lists

The TCPA restricts the use of Automatic Telephone Dialing Systems (ATDS) to call consumers' cell phones without the prior express consent of the called party for non-telemarketing calls or the prior express written consent of the called party for all telemarketing calls. Some states also restrict calls to cell phones unless the call is in response to the consumer's "prior express consent." None of the state regulations define "prior express consent."

However, calls may be made to wireless numbers if they are manually dialed in some cases where the number is scrubbed against state, federal and internal DNC lists.

### E. Call Campaign Examples and DNC Call Rules

**1. Prospect Campaign:**

A Prospect Campaign targets prospects that are not existing Pelican customers. Prospects whose phone number is listed on a federal or state DNC registry may not be contacted in such a campaign, unless they have given specific consent for such a contact (see the "Inquiry Leads – EBR Guideline" campaign section below). Remember that making a marketing call (e.g. lead follow-up call to a prospect) with the intent to sell is considered a "sales campaign". Calling lists must also be scrubbed against Pelican's Internal DNC list.

**2. Existing Customer Sales Campaign:**

This is a sales campaign targeted to existing customers. Remember that calling a current customer with the intent to sell is considered a "Sales" call. A customer's phone number on the Pelican Internal DNC registry should be removed from all outbound calling lists. Regulatory rules prohibit sales calls to phone numbers on Pelican' internal DNC registry. Unless exempt, consumers whose phone number is listed on the federal or state DNC registry may not be contacted in such a campaign.

**3. Inquiry Lead EBR Guideline:**

When a potential customer makes an inquiry or asks for a contact from Pelican, regulatory rules permit agents to respond for up to 90 days under the federal EBR exemption rule. Pelican maintains a chart that provides the state timeframes for each EBR call. If you are hand selecting calls instead of porting them through our system, then please request a copy of the chart to ensure that you are calling within the set parameters.

## Procedure

It shall be the responsibility of the Compliance Manager to identify and document all applicable state and federal DNC rules and regulations. The Compliance Manager shall, at least annually,

review all such laws and update the company charts and notify IT team, and others, to facilitate any changes.

The Compliance Manager shall identify and track all third-party lead providers.

It shall be the responsibility of the IT Director to ensure that all leads from all sources are scrubbed against the applicable DNC lists and made ready to call. The leads will then be sent to the appropriate department to be dialed.

The Compliance Manager will develop and implement DNC lists exception reports to monitor whether or not any of the leads called during the preceding days calling activity where not listed on any applicable DNC lists. The Compliance Manager shall document each issue identified on such reports and will investigate as to why the issue happened and what steps have been taken to prevent an occurrence in the future.

The Compliance Manager shall review and make recommendations and changes to this Compliance Manual (as needed) at least annually. At least annually, the Compliance Manager shall provide the Compliance Manual to the Managing Director of Pelican for review and approval.

## 2. Call Recipient (Prospect/Sales Lead) Telephone Technology

Pelican may screen prospect and existing customer lists and determine what kind telephone will receive outbound call contact for solicitation purposes. Four possibilities are subject to evaluation:

- **A. Land Lines**
- **B. Cell Phones**
- **C. Land Lines Ported to Cell Phones**
- **D. Cell phones ported to Land lines**

Each of these is discussed in more detail below.

### A. Land Lines

All types of calls (Informational, Dual-Purpose and Marketing) may be made to prospective and existing customers using their residential home phone numbers or "land lines", as long as the phone number is not included on the federal, state or internal DNC registry.

Marketing calls may be made to prospective and existing customers on their land lines using both ATDS and non-ATDS equipment so long as all DNC rules (discussed above) are met.

### B. Wireless devices (Cell Phones)

Informational calls placed to a cell phone number using ATDS equipment are only permissible if the wireless device subscriber has provided Pelican with **prior express consent**.

Informational calls placed to a wireless device using a manual dial telephone process by a live operator do not require prior express consent.

Dual-Purpose and Marketing calls placed to a wireless device number using ATDS equipment are only permissible if the wireless device subscriber has provided Pelican with **prior express WRITTEN consent.**

Dual-Purpose and Marketing calls placed to a wireless device number using a manual dial telephone process by a live operator do not require prior express written consent.

**C. Land Lines Ported to Cell Phones/Cell phones to Land Lines**

Many consumers have dropped their residential land-line numbers and had the numbers transferred, or "ported" to their wireless device. These former land-line numbers now assigned to a wireless device can be difficult to distinguish from current land lines. However, federal law requires that companies treat these former land-line numbers as wireless numbers with regards to telemarketing.

As such, the rules for Informational, Dual-Purpose and Marketing calls made to the ported land-line number of a wireless device subscriber are the same as those for wireless device outlined in Section B above.

In order to help distinguish between these ported land-line numbers and actual land-line numbers, to the extent that Pelican is not receiving express written consent to call telephone numbers, it will rely on the currently FTC authorized Wireless Block Identifier and the Wireless Ported Number vendor to screen lead lists against a wireless and ported numbers at least every 15 days. In such scenarios, departments making outbound calls to prospective and existing customers must ensure that their calling lists have also been scrubbed against the ported land-line number list.

## 3. Call Originator (Agent/Representative) Telephone Technology

Federal and state laws also regulate Marketing and Dual-Purpose calls based on the type of technology used in making the call. Specific restrictions apply depending on the kind of technology being employed for these outbound calls, which include:

    **A. Automated Telephone Dialing Systems**
    **B. Manual Dialing Systems**
    **C. Live Voice**

Each of these is discussed in more detail below.

## A.  Automated Telephone Dialing Systems

Under the FCC rule changes that became effective October 2013 and clarified in 2015, federal law prohibits using an automatic telephone dialing system (ATDS) to place a telemarketing/advertising calls to a cell phone, pager or any other number for which the called party is charged without the cell phone subscriber's prior express written consent.

The term ATDS is defined as **"equipment which has the <u>capacity</u> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."**  Such equipment is considered to be an ATDS regardless of whether it is used in such manner or whether it has the current capacity or can be modified, either technically or physically at some future time, that it would provide such capacity.  "Capacity" should be so broadly interpolated as to include any equipment that "Lacks the 'present ability' to dial randomly or sequentially" but can be modified at some future time to provide those capabilities.

All outbound calls using an ATDS system have special requirements, as noted in Section IV.2.2 above.

Business units engaging third-party vendors in telemarketing campaigns must ensure that they abide by the federal requirements governing the use of ATDS equipment.  Additionally, vendors will be required to sign a legal acknowledgment form attesting to their compliant use of such equipment when engaged in telemarketing on Pelican' behalf.

## B.  Manual Dial Systems

Manual dial systems are phone systems that include equipment that can dial phone numbers when done so by a human and do not use a random or sequential number generator, nor can they dial numbers without human intervention or be modified to do so.

When using a manual dial systems please refer to section A(2)(B) regarding the requirements for calling cell phones and section A(1) regarding Do-Not-Call requirements.  Also, please refer to the following section on "Live Voice" for additional considerations.

## C.  Live Voice

Informational, Dual-Purpose and Marketing calls placed by a live operator ("live voice") to a prospective or existing customer using a manual dial phone are permitted under federal and state law, so long as the individual called is not on any DNC registry or an exemption applies.  This is true regardless of whether the call is placed to a cell phone, VoIP, land line or ported land line.

Pelican_00012

Informational live voice calls placed to a prospective customer using an ATDS must have the cell phone subscriber's prior express consent if the call is being made to a cell phone or ported land line.

Informational live voice calls placed to an existing customer using an ATDS requires prior express consent if placed to a ported cellphone and no additional consent to place the call to a land line.

Dual Purpose and Marketing live voice calls placed to a prospective customer or existing customer using an ATDS must have the cell phone subscriber's prior express written consent if the call is being made to a cell phone or ported land line.

Dual-Purpose and Marketing calls placed by a live operator ("live voice") via an ATDS to a prospective or existing customer's residential land line do not require prior consent, so long as the caller is not on any DNC registry.

**Procedure**

The Compliance Manager shall review and document each dialing process to determine, in part, if the dialing system or method is 1) an Automatic Telephone Dialing System; 2) manual dialing process; or 3) could be used as an ATDS. If the system is or could be considered to be an ATDS, the Compliance Manager shall inform the IT Manager to ensure that no wireless numbers will be dialed using the system without appropriate consent. Prior to modifying or implementing any new dialing system, the Compliance Manager shall review the system, determine the type of system it is (manual/ATDS), document the review and notify the IT Director. The IT Director will only use the system in an approved manner.

The Compliance Manager will develop and deploy regular and ongoing review and tracking of all dialing equipment. The review documentation will include, in part, the system name, the type of dialing system, the review date, the reviewers name, date of the review, the system owner, and approved use of the system. The results of the review will be communicated to the Managing Director and IT Director and any others who may need to know.

## 4. EBR and Consent to Call Exemptions

### A. Existing Business Relationship (EBR)

Federal law does not prohibit a company from placing calls to consumers with whom it has an EBR, even if such consumers' numbers are listed on the National DNC Registry. Consumers can, however, request a company to place their numbers on Pelican's Internal DNC registry. In such case, federal law prohibits Pelican from calling that number until the consumer revokes their internal DNC request in writing.

Under federal law, a company has an EBR with consumers who have entered into a transaction (i.e. bought, rented, or leased a product or service) with the business

during the previous 18 months. For purposes of an EBR, a transaction will be deemed to have occurred on the date of the last payment or provision of a service, whichever is later. Thus, for a student loan or other types of services, the 18 months will begin to run at the time of expiration of the loan or last date of the provision of the service. A company also has EBR's with consumers who have made inquiries to that company (i.e. inquired about its products or services) within the previous three (3) months. See company EBR spreadsheet if you have state-specific questions.

The EBR exemption extends to affiliates and subsidiaries that have the same name or are marketing the same kind of good or service (e.g., Time Magazine and Time-Life Books), but not to all affiliates within a company. According to the FTC, an EBR extends to an affiliate or subsidiary only if the consumer has a reasonable expectation to be contacted by the affiliate or subsidiary based upon the readily apparent affiliation between the caller and Pelican with whom the consumer has the EBR.

Pelican will not typically have an EBR with a prospective customer, other than a temporary one granted under an inquiry or request for contact. Additionally, an EBR held by one affiliate does not give another affiliate the legal standing to contact that customer to solicit their business if the individual is on a DNC registry.

If a prospective customer completes a contact form or on-line form providing authorization for a marketing call, or grants permission for contact by an affiliate during a call with a Company telephone representative, this authorization allows Pelican to contact the prospect legally, even if they are listed on a DNC registry. As noted in the Do Not Call section above, this authorization is for a limited time frame. See Section B, Prior Express Written Consent, for additional information.

Pelican primarily places outbound calls to consumers with whom it has EBR's or to consumers that provide express written consent to be contacted. EBR and/or express consent leads are generated via online opt-in forms, during inbound calls, during campaigns by third party vendor partners, lead generators and/or other advertising. Pelican documents the existence of all exemptions by saving electronic records of consumers' online opt-ins, obtaining electronic signatures and/or by recording verbal authorizations.

With respect to leads generated via online forms and advertising, Pelican shall, at a minimum, record and maintain the following documentation for each lead:

- Consumer's name;
- Consumer's phone number;
- Consumer's IP address;
- Time/date of consumer's inquiry and/or consent;
- The total number of companies that they should expect a call from or the names of those companies;
- The URL where the consumer provided consent; and

- The language/disclosures used on the webpage where the consumer inquired about Pelican goods/services or provided express consent to be called using an ATDS (if applicable).

Periodic reviews of the lead generation processes, scripts, call recordings and consent records must be conducted to ensure exemptions are properly established and documented. All such consumer consent shall be retained by Pelican for a minimum of 4 years from the date of the last telephone call since a lawsuit may be filed for purported TCPA violations within 4 years of receiving an alleged unlawful call.

## B. Prior Express Written Consent

Federal and state laws permit all types of calls made to prospective and existing customers who have provided prior express written consent to be called. Note that if a prospective or existing customers provides a company with prior express written consent for marketing and dual-purpose calls, that consent overrides any entries on any DNC registry for the specific phone number the consumer provided. In other words, if a prospective customer is on the federal DNC registry, but provides Pelican with prior express written consent for telemarketing calls, Pelican may legally contact that customer despite the fact they listed their phone number on the federal DNC registry.

In order to obtain legally sufficient express written consent, the following requirements must be met:

1. The agreement must be in writing and signed by the consumer (an electronic signature is sufficient if the form of such signature is recognized as valid under applicable federal and state laws)

2. The seller must obtain consent only after a clear and conspicuous disclosure regarding the purpose of the agreement (e.g. to authorize the seller to call the consumer despite the consumer's phone number being listed on the DNC Registry and/or to authorize the seller to use an ATDS or prerecorded message to contact the consumer). That disclosure must include the following elements:

   a) It must specifically authorize the caller to place telemarketing calls to the consumer;

   b) It must clearly authorize the caller to use an ATDS;

   c) It must include the telephone number to be called; and

   d) It must disclose that consumers are not required to sign the agreement (directly or indirectly) or agree to the agreement as a condition of purchasing any property, goods or services.

3. The seller must obtain consent without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

4. The person giving express written consent must take some affirmative action to indicate his/her assent (e.g. checking a box or writing "yes" when asked whether the person wishes to receive certain calls);

5. The express written consent must evidence the willingness of the recipient of the call to receive calls by or on behalf of a specific seller (i.e. Pelican).

If Pelican is using an ATDS to contact prospective customers on their cell phone with a telemarketing message, prior express written consent is required.

## C. Prior Express Consent

Pursuant to FCC guidance on transactional or non-telemarketing calls, a consumer who knowingly provides his/her cell phone number to a business as a contact number has provided express consent to be contacted at that number. Therefore, if a customer (or prospective customer) has directly provided us with their cell phone number as a contact number, Pelican may use an ATDS to call that number for **non-telemarketing** purposes unless or until the individual revokes their consent (e.g. by asking to be placed on a DNC registry, by asking not to be called, hanging up, by stating it is the wrong number, stating they are not interested or by any other reasonable means).

Periodic reviews of the lead generation processes, scripts, call recordings and consent records must be conducted to ensure exemptions are properly established and documented.

## D. Consent Not Required

Under federal law, no prior consent of any kind is required to call a prospective customer who is not on a DNC registry, as long as all of the following conditions are met:

1. The call is placed using a live operator;
2. The call is placed using a manual dial phone system;
3. The call does not involve the use of a pre-recorded message;
4. The contact with the customer is not made using a text message.

## Procedure

The IT Director shall develop and implement an automated process to capture and preserve each source of an EBR exemption and express consent and express written consent. The Compliance Manager shall support this process by providing guidance and direction as needed. The Compliance Manager shall from time to time and at least annually, review the EBR/consent process and shall document the review. Any issues noted during the review shall be investigated, corrected and resolved. Additionally, verify that processes are developed and implemented to ensure the issue doesn't occur again.

## 5. Timing of Call

### A. Call Curfews – Hours/Days

Under the TCPA, telemarketing calls are limited to the period between 8 AM and 9 PM, based on the local time of the person receiving the call.  Additionally, many states limit telemarketing to more restrictive periods and also prohibit calls on certain days of the week and holidays. If hand-dialing calls, you must use our chart that shows time restrictions for calls. Otherwise, we have set into place automatic time restrictions.

All outbound telemarketing calls must be made in compliance with all applicable federal and state requirements regarding permissible hours and days for telephone solicitation.

Business units using ATDS equipment must use dialer settings to prevent calls from being placed to consumers outside of permissible calling hours and/or on prohibited days.  Business units shall be responsible for ensuring dialer settings are accurate and up to date.

Employees placing telemarketing calls placed manually (i.e., without the use of ATDS equipment) must comply with the federal requirements noted above and the various state requirements provided in Appendix D.

Pelican should monitor dialer settings and manually placed telemarketing activity on a regular basis.

### B. Legal Holidays

Several states prohibit calling into the state on legal holidays.  Please see our separate chart if hand dialing and not tied to our system that already restricts dialing at those times.  States may declare additional days as official holidays.  Pelican will stay up to date on official holidays in these states and suppress outbound calls to these states on such holidays. Legal holidays shall be loaded into the dialer at the beginning of each year and checked on a monthly basis (to account for any changes and/or holidays declared by state governors).

Telemarketing calls placed manually (i.e., without the use of ATDS equipment) must comply with the various state requirements regarding legal holidays.

**Procedure**

The Compliance Manager shall review applicable state and federal laws to ensure that all applicable call time and holiday call time restrictions have been identified. The calling restrictions shall be provided to the IT Director who will ensure they are applied to each calling program.

The Compliance Manager will develop and implement call time restrictions exception reports to monitor whether or not any of the leads were called outside of the applicable calling restrictions. The Compliance Manager shall document each issue identified on such reports and will investigate as to why the issue happened and verify that processes are developed and implemented to ensure the issue doesn't occur again.

## C. In-Call Obligations

### 1. Recording & Monitoring Calls

Federal law and the laws in the majority of states require one call participant to consent before a telephone call may be recorded. Twelve states, however, require consent from all parties before a call may be recorded.

The requirements in the other all-party states can typically be met simply by announcing that calls may be recorded for quality assurance. Please see Appendix B for more information regarding each state's requirements that apply to Pelican.

Pelican records all calls, both incoming and outbound. Consent shall be obtained from employees by having them sign Consent to Record forms. Consent shall be obtained from all consumers by announcing that calls may be recorded. Pelican may use an IVR to make such an announcement on inbound calls.

### 2. Caller Identification

Federal law requires telemarketers to transmit their telephone number and the Pelican name (if normally able to include the name) when placing outbound telemarketing call through any dialing means.

Consumers can contact Pelican using the Caller ID number and make a request to be placed on Pelican's DNC registry.

### 3. General Abusive Conduct

It is an abusive telemarketing act or practice, and a violation of Federal Rules, for any seller or telemarketer to engage in the following conduct:
1. Threats, intimidation, or the use of profane or obscene language;
2. Disclosing or receiving, for payment, unencrypted consumer account numbers for use in telemarketing; provided, however, this requirement does not apply to the disclosure or receipt of a customer's billing information to process a payment for goods or services for a transaction.
3. Denying or interfering with a consumer's right to be placed on a Do Not Call list
4. Except as expressly permitted by the applicable credit card system, it is a deceptive telemarketing act or practice and a violation of Federal Rules for:

- A merchant to present or cause someone else to present to or deposit into, the credit card system for payment, a falsely generated credit card sales draft that is not the result of an actual telemarketing transaction between the cardholder and the merchant;
- Any person to hire, solicit, or otherwise cause a merchant, or an employee, representative, or agent of the merchant, to present to or deposit into the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant; or
- Any person to obtain access to the credit card system through the use of a business relationship or an affiliation with a merchant, when such access is not authorized by the merchant agreement or the applicable credit card system.

5. It is a deceptive telemarketing act or practice and a violation of Federal Rules for a person to provide substantial assistance or support to anyone when that person knows or consciously avoids knowing that, that other person is engaging in any act or practice that violates Federal Rules

**Procedure**

The Compliance Manager shall review applicable state and federal laws to ensure that all call recording notification laws have been identified. The Compliance Manager shall inform the IT Director who will ensure they are applied to each calling program that is recorded. The Compliance Manager shall review the call recording disclosure process on each inbound and outbound call program and shall document and investigate as to why the issue happened.

If any changes or updates necessary to the disclosures, Compliance Manager will recommend the updated disclosure language and shall bring the issue to the attention of the Managing Director, Call Center Director and IT Director.

Lastly, verify that the recommendations have been processed and implemented to ensure the issue doesn't occur again.

## 4. Special Permission & Other Requirements

### A. No Rebuttal

Some states have laws governing the extent to which representatives can make rebuttals during a sales call. Some states have laws requiring sales reps to discontinue the call if a consumer verbally states that they do not want the product or service offered. Other states require sales reps to discontinue the call when a consumer indicates that they wish to terminate the call. Please see **Appendix A** for a list of "No Rebuttal" states and the specific requirements of each state that applies to Pelican.

### B. Miscellaneous Requirements

1. **Emergency Numbers**

   Federal law prohibits using an ATDS to place any calls to emergency phone lines. This requirement includes 911 numbers, hospital emergency lines, physicians or medical service lines, health care facilities, poison control centers, fire protection and law enforcement agencies.

2. **Multi-Line Businesses**

   Federal law prohibits using an ATDS in a manner that simultaneously engages two (2) or more lines of a multi-line business.

   Pelican does not call emergency telephone numbers, simultaneously engage two (2) or more lines of a business or send faxes in its telephone solicitation practices.

**Procedure**

The Compliance Manager shall review applicable state and federal laws to ensure that all restrictions have been identified. The scripting and dialing restrictions shall be provided to the Director of Call Center Operations and the IT Director respectively who will ensure they are applied to each applicable calling program. The Compliance Manager shall develop and implement a script review process and shall review and approve each script prior to use.

The Compliance Manager will notify the Call Center Director of Operations to inform all call center managers that any material changes to any script must be reviewed and approved by the Compliance Manager prior to use.

The Compliance Manager shall identify a resource(s) to identify Emergency Numbers and shall work with the IT Director to ensure that no more than two (2) lines of any multi-line business are not engaged at one time using an ATDS.

## 5. Required Disclosures

### A. Federal Disclosures

During outbound calls, the caller must disclose the identity of the seller, the fact that the purpose of the call is to sell goods or services, and the nature of the offered goods or services.  This information must be disclosed "promptly," meaning, at a minimum, before any sales pitch.

The following disclosures must be communicated to each consumer before he/she accepts the offer or makes payment: (1) the total cost of the goods or service offered; (2) any material restrictions, limitations, or conditions attached to the offer; and (3) refund policies (or lack thereof).

Federal law requires companies to establish a DNC policy and provide it to their customers and potential customers upon request.

Pelican has adopted a written DNC Policy (included as Appendix A) and makes this policy available to consumers upon request.  Appendix A also contains a form letter to be used to send copies to consumers who request the DNC Policy.

### B. State Disclosures

The majority of states with telemarketing statutes have specific disclosures requirements. These requirements include:

1.  Solicitation disclosures (must be made at the beginning of all calls);

2.  Purchase disclosures (must be made if the consumer decides to make a purchase); and

3.  Prize disclosures (must be made whenever a prize, gift or premium is offered).

Many of these requirements track with the disclosures required under federal regulations, but several states have additional requirements.  Please see Appendix E for more information regarding each state's specific disclosure requirements. Pelican will adhere to all applicable federal and state disclosure requirements.

**Procedure**

The Compliance Manager shall review applicable state and federal laws to ensure that all scripting requirements have been identified. The scripting requirements shall be provided to the Director of Call Center Operations and the IT Director respectively who will ensure they are applied to each applicable calling program script. The Compliance Manager shall develop and implement a review process and will conduct reviews and approve each script prior to use.

The Director of Call Center Operations will notify the Compliance Manager of any material changes to any script. The Scripts must be reviewed and approved by the Compliance Manager prior to use.

## V. INFORMATION ONLY CALLS

This section outlines our policy for telephone calls to individuals that have purchased student loan services offered by Pelican.

Generally speaking, most of the requirements identified in Section IV do not apply to Information Only outbound calls.  However, there are some important exceptions pertaining to calls made to cell phones and ported land lines, which are discussed in detail below.

## A. Calling Cell Phones, VoIP and Ported Land Lines

Outbound calls to cell phones, VoIP and ported land lines can potentially result in unwanted costs to the call recipient, depending on their phone plan.  Because of this, federal law has imposed restrictions on all types of outbound calls made to an individual's cell phone, VoIP or ported land line.  These restrictions are discussed based on the subject areas listed below.

### 1. Automated Telephone Dialing Systems

Information Only calls made to a prospect, current customer or claimant may not be made using an ATDS unless Pelican has obtained prior express consent from the individual being called.  Refer to Section IV.A.4.C for details on what constitutes prior express consent.

**Procedure**

The Compliance Manager shall review and document each dialing process to determine, in part, if the dialing system or method is a 1) an ATDS; 2) manual dialing process; or 3) could be used as a ATDS.  If the system is or could be considered to be an ATDS, the Compliance Manager shall inform the IT Manager to ensure that no wireless/VoIP numbers will be dialed using the system without appropriate consent. Prior to modifying or implementing any new dialing system, the Compliance Manager shall review the system, determine the type of system it is (manual/ATDS), document the review and notify the IT Director. The IT Director will only use the system in an approved manner.

The Compliance Manager will develop and deploy regular and ongoing review and tracking of all dialing equipment. The review documentation will include, in part, the system name, the type of dialing system, the review date, the reviewers name, date of the review, the system owner, and approved use of the system. The results of the review will be communicated to the IT Director and any others who may need to know.

## VI.    BEST PRACTICES FOR IMPROVED CUSTOMER EXPERIENCE

Pelican strives to maintain a comprehensive, effective quality assurance program that is designed to ensure we exceed our customers' expectations and embodies our belief that customer satisfaction is the best competitive advantage.   We take responsibility to ensure a positive call experience for our customers, and that the level of service and care they receive from our company is exceptional.  This process begins with the management team within Pelican and flows down to the phone representatives.

Towards that end and using federal and state requirements for telemarketing by other industries as a guide, best practice requirements have been established in the following areas.

### 1. Monitoring Sessions

All programs will be monitored on an ongoing basis by Pelican management team to ensure sales representatives are complying with Pelican quality objectives.

**2. Proper Identification**

Telephone sales representatives should always identify themselves (using first and last name, if required by state law) and address the consumer with First and Last name (Mr./Mrs./Ms. salutation). This is done out of respect for the consumer.

**3. Customer Sensitivity**

Each telephone sales representative should be instructed to get a supervisor or manager to handle calls from concerned / irate consumers. The consumer will feel that their complaint or concern is important when a next-level employee takes the call. Supervisors should be well versed on how to handle irate consumers.

**4. Child Protection/ Sensitivity**

Pelican does not market to children, and telephone sales representatives are prohibited from engaging in phone conversations with children at any time. The purpose of our call is to speak to qualified adult buyers only. The only exception to this rule is when a child answers the phone, at which time the telephone sales representative must immediately ask for the person whose telephone number has been called. At no time should a representative ask when a child's parents will be home.

**5. DNC Requests**

All representatives must receive special instruction on how to handle requests to be removed from Pelican calling list. Scripting must be provided and available for each telephone sales representative during every shift. Failure to honor these requests could have serious legal ramifications.

**6. Verbatim Confirmations**

Verbatim confirmations are required across the board. When the consumer has made a positive decision to accept the offer, we are obligated to ensure there is a clear understanding of the commitment being made and the billing process. Pelican will record all sales confirmations and will provide them to clients upon request.

**7. Call Content Consistency**

Employee adherence to the script is critical to ensuring compliance requirements are met during the course of a call. Employees must follow script guidelines while conveying program details in a conversational fashion. Our employees' ability to satisfy the consumer's needs and expectations will drive improvement of the customer experience and have a major impact on customer retention.

**8. Dialogue**

While Pelican requires strict script adherence, we expect our employees to be "conversational" while using the words in the script. Script adherence is critical but being

conversational is important to setting the call apart and providing the customer with an experience that communicates their business is individually valued.

**Procedure**

The Compliance Manager shall develop and implement Best Practice training for all call center personal. The training shall be taken at the time of hire and annually thereafter. The training shall include proof of learning. The results of the training shall be monitored and documented.

## VII.        PRE- AND POST-CALL OBLIGATIONS

Regardless of the type of call placed, certain pre- and post-call obligations must be met by all business units placing out-bound calls to prospect and customers.  Those obligations are discussed in detail below.

## A.  Record Keeping

The goal of Pelican record keeping activities with regard to its telephone solicitation practices is to demonstrate beyond doubt that Pelican has complied with all applicable requirements in its telemarketing activities.  This is particularly important as it pertains to documenting prior express written consent granted by a customer or potential customer.

The Telephone Sales Rule (TSR) is a federal law that requires telemarketers to keep certain records that relate to their telemarketing activities for two (2) years, including (if applicable): advertising and promotional materials, telemarketing scripts, call records including the name, phone number, call disposition, and campaign name; information about prize recipients, sales records, employee records, and all verifiable authorizations for demand drafts.  Additionally, several states have requirements that mirror the TSR, although some states impose additional requirements and/or require telemarketers to keep records for a longer period of time.

Pelican's Record Retention schedule requires that all telemarketing records be kept for a minimum of 24 months.  This is sufficient to comply with all record retention requirements outlined in the TSR and in individual state telemarketing laws. TCPA opt-ins must be retained for at least 4 years from the time of the last telephone call to the consumer.

**Procedure**

The Compliance Manager shall use the Pelican record retention schedule for all compliance related records.

## B.  Registration

There are different types of registration requirements that vary by state.  Some states require registration only if Pelican is making outbound solicitation calls.   Other states require

registration if Pelican solicits inbound calls and makes a sale over the telephone. Some require registration even if Pelican is otherwise exempt from registration. There are also some states that do not have any telemarketing registration requirements.

Pelican will review each the states having a telemarketing registration requirement and determine if it have any obligation to register. Each state review will be documented either showing the need to become registered or the exemption(s) that apply Pelican and it business.

Pelican maintains a summary chart that outlines the general telemarketing registration requirements.

**Procedure**

The Compliance Manager shall identify all applicable state registration laws and conduct a review of such laws to determine their applicability to Pelican. The state law review shall be documented and updated as needed on a regular basis. Should a registration event occur, the Compliance Manager shall take steps to register in the applicable jurisdiction in a timely manner. The Compliance Manager shall maintain each registration as required by law and shall at least annually report to upper management the status of each registration.

## C. Employee Training

Federal law and the laws of many states require that companies engaging in telemarketing have a clearly defined training program for personnel making the telephone solicitations.

At Pelican, all employees must undergo compliance training as part of their orientation and must meet annual compliance training requirements. All training is documented by employee sign-off forms (see Appendix H). Employee agents and others who make outgoing telemarketing calls to customers or potential customers shall receive specific compliance training relative to the requirements identified in this Policy.

Training and education are conducted on an ongoing basis to ensure Pelican quality expectations are being met. While each business unit tailors the training of their employees around the specific responsibilities, goals and objectives of that unit, certain general principles exist for all employee training relative to outbound calling. This training requires a collaborative effort from the business unit and its training, quality assurance, and compliance partners to ensure success. The following principles should be observed when developing and conducting training for employees who will make outbound calls.

- Customer experience programs should focus on the customer.
- Call consistency. Are the quality standards outlined by Pelican adhered to on each call?
- Does everyone associated with the program clearly understand the quality objectives and is there a plan in place to measure the results?
- Opportunities to improve telephone sales representative satisfaction and retention should be continuously identified.

**Procedure**

The Compliance Manager shall develop and implement Call Center training for all call center personal. The training shall be taken at the time of hire and annually thereafter. The training shall include proof of learning. The results of the training monitored and documented.

## D. Vendor Certification

Pelican will review each third-party vendor prior to signing an agreement or allowing them to conduct business on our behalf. Each vendor must meet our high standards of operating excellence and comply with all applicable laws and rules. Each vendor must be reviewed according the services they provide to or on behalf of Pelican to ensure they are financially and operationally capable to provide their products and services.

Pelican will, at least annually, review the vendor agreement, processes, quality of service, required registrations, certifications, among other things to ensure the ongoing compliance and continuity of service.

Any security, ethical or suspicious activity will be investigated, reviewed and addressed as needed. Any vendors that do not meet Pelican standards or legal requirements will be either provided the opportunity to remediate the issue(s) or other corrective actions including termination of the agreement may be taken.

**Procedure**

The Compliance Manager shall review all third-party vendors; the review shall include, in part, an agreement review, privacy policies, websites, disclosures, systems used to transfer leads and personal information, and other relevant information. The Compliance Manager shall determine if the third-party vendor operates with the high standards of Pelican. Vendors may be required to take certain training; any such training shall be documented and a proof of learning will be required. Vendors will not be allowed to conduct business with Pelican until the review has been completed and the vendor is approved. (Please see the Third-Party Vendor Management Program documents for further information)

## E. Policy Maintenance

This policy will be reviewed and approved by a senior manager at least annually. Should changes be required, those changes will be documented and the versioning changes will be maintained. Each approved version shall be retained in compliance with the Pelican Data Retention Policy.

## VIII.    Email

Pelican_00026

Pelican will comply with the CAN-SPAM Act as it applies to commercial messages, which the law defines as "any electronic mail message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service," including email that promotes content on our websites. That means all email – for example, a message to former customers announcing a new service line – must comply with the law.

Pelican will comply with SPAM laws for each separate email buy including each of the following main requirements:

1. Don't use false or misleading header information. Your "From," "To," "Reply-To," and routing information – including the originating domain name and email address – must be accurate and identify the person or business who initiated the message.

2. Don't use deceptive subject lines. The subject line must accurately reflect the content of the message.

3. Identify the message as an ad. The law gives you a lot of leeway in how to do this, but you must disclose clearly and conspicuously that your message is an advertisement.

4. Tell recipients where you're located. Your message must include your valid physical postal address.

5. Tell recipients how to opt out of receiving future email from you. Your message must include a clear and conspicuous explanation of how the recipient can opt out of getting email from you in the future. Craft the notice in a way that's easy for an ordinary person to recognize, read, and understand. Creative use of type size, color, and location can improve clarity. Give a return email address or another easy Internet-based way to allow people to communicate their choice to you. You may create a menu to allow a recipient to opt out of certain types of messages, but you must include the option to stop all commercial messages from you. Make sure your spam filter doesn't block these opt-out requests.

6. Honor opt-out requests promptly. Any opt-out mechanism you offer must be able to process opt-out requests for at least 30 days after you send your message. You must honor a recipient's opt-out request within 10 business days. You can't charge a fee, require the recipient to give you any personally identifying information beyond an email address, or make the recipient take any step other than sending a reply email or visiting a single page on an Internet website as a condition for honoring an opt-out request. Once people have told you they don't want to receive more messages from you, you can't sell or transfer their email addresses, even in the form of a mailing list. The only exception is that you may transfer the addresses to a company you've hired to help you comply with the CAN-SPAM Act.

7. Monitor what others are doing on your behalf. The law makes clear that even if you hire another company to handle your email marketing, you can't contract away your legal responsibility to comply with the law. Both the company whose product is promoted in

the message and the company that actually sends the message may be held legally responsible.

**Procedure**

The Compliance Manager shall identify all applicable electronic mail laws and ensure those laws are reviewed and applied as needed. The Compliance Manager shall review all email programs to ensure applicable laws are applied prior to use. A record of the review and approval shall be maintained.

The Compliance Manager shall review, from time to time, each email program and document the review.

## IX. MONITORING

Pelican takes responsibility to ensure that our business is conducted in a professional, ethical and caring fashion that ensures all conversations are polite and send a positive message.

Compliance monitoring assists in scripting, training, sales development, call verification, consumer DNC requests and dealing with consumer complaints. Monitoring also is done to measure and acknowledge superior performance. To ensure the best calls possible, Pelican stresses customer sensitivity and critiques calls from the customer's point of view:

- How does it sound?
- Does it make sense?
- What are the telephone representatives saying?
- How do the telephone representatives sound?
- How is the consumer responding to the offer?
- Is the consumer pleased with the call?

There are many challenges facing companies who engage in telemarketing today. In order to stay competitive and meet these challenges, we must perform at a superior level in all aspects of our business, but especially customer satisfaction.

Telemarketing operations should be monitored on a daily basis to provide:

- Immediate feedback and recommendations to management staff.
- Weekly monitoring sessions to calibrate the calling effort with the management team.
- QA monitoring and follow-up for specialized needs and requests for both sales and quality issues.

Pelican_00028

# APPENDICES

---

**APPENDIX A:**   **No Rebuttal States & Statutory Language**

**APPENDIX B:**   **Consent to Record Rules**

**APPENDIX C:**   **Compliance Forms for Employee Training & Orientation**

## A. NO REBUTTAL STATES AND STATUTORY LANGUAGE

| No-Rebuttal States | | |
|---|---|---|
| **STATE** | **RELEVANT STATUTORY LANGUAGE** | **EXEMPTIONS TO RULE** |
| Alaska | A telephone seller must terminate the telephone solicitation and promptly disconnect the telephone line if the person receiving the call objects to the solicitation or indicates that the person is not interested in the product or service that is the subject of the solicitation. | Rule applies to all persons who attempt to sell property or services by telephonic means to two or more persons. |
| Arkansas | If the person receiving the telephone call indicates that he or she does not want to hear about the charity, goods, or services, the caller shall not attempt to provide additional information during that conversation about the charity, goods or services. | Rule applies solely to calls to residential phone numbers (not business to business) |
| Idaho | It is an unlawful act for a telephone solicitor to refuse to hang up and free the purchaser's line immediately once requested to do so by the purchaser. | None |
| Illinois | Editor's Note: Query as to whether second part of Permission to Continue language listed in this Guide ("It is a violation of this Act to continue with a solicitation placed by a live operator without the consent of the called party.") creates a "no rebuttal" rule in IL. | Jurisdictional: The Illinois Telephone Solicitations Act does not apply to: telecommunications carriers; any bank, trust company, savings & loan, credit union, or licensee under the Consumer Installment Loan Act; licensed insurers; licensed Real Estate Agents (or any affiliates, subsidiaries, employees or agents of any such entities.)<br><br>Express: telephone calls made by an auto-dialer; telephone calls made by a person who is a registered securities dealer; calls by licensed insurance agents. |
| Kansas | Telephone solicitors must promptly discontinue the solicitation if the person being solicited gives a negative response at any time during the consumer telephone call. ("Negative response" means a statement from a consumer indicating the consumer | Same exemptions as for DNC rules. |

| | | |
|---|---|---|
| | does not wish to listen to the sales presentation or participate in the solicitation presented in the consumer telephone call.) | |
| Mississippi | Any telephone solicitor who makes an unsolicited telephonic sales call to a residential telephone number shall discontinue the call immediately if at any time during the conversation the person being solicited expresses disinterest in continuing the call or sales presentation. | All exemptions listed in § 77-3-609. |
| North Carolina | Any telephone solicitor who makes a telephone solicitation shall comply with the following: if the telephone subscriber objects to the telephone solicitation, the solicitor shall terminate the call and promptly disconnect from the telephone line of the person called. | See definitions of key terms. |
| Pennsylvania | It is prohibited for a telemarketer to fail "to end a telemarketing solicitation call when the consumer indicates he wants to end the call." | Business-to-business telephone calls.<br><br>In 73 P.S. §2242(4), the definition of "business-to-business" is as follows: "A person or business conducting a business-to-business sale where the selling business has been operating continuously for at least three years under the same business name and has at least 50% of its dollar volume consisting of a repeat sale to existing businesses." |
| South Dakota | Telemarketers must immediately hang up the telephone any time during the solicitation that the consumer expresses disinterest in the good or service offered. | (see discussion on exemptions in general notes in SD summary sheet.) |
| Utah | A telemarketer who makes an unsolicited call to a consumer must "discontinue the solicitation if the person being solicited gives a negative response at any time during the telephone call." | Calls in response to an express request of the person called; debt collection calls; calls regarding established business relationships; calls as required by law for a medical purpose. (Utah Code Ann. § 13-25a-102(8)) |

| | | |
|---|---|---|
| Washington | The way the WA "no rebuttal" rule is phrased, if a prospect indicates he does not wish to continue the conversation WITHIN THE FIRST MINUTE of the phone call, then the solicitor must terminate the call within 10 seconds. | Same exemptions as for registration. |

Pelican_00032

## B.  CONSENT TO RECORD RULES

| Call Recording Consent Rules | | |
| --- | --- | --- |
| **STATE** | **CONSENT RULES** | **SUMMARY OF RULE** |
| Alabama | One party | A person commits the crime of criminal eavesdropping if he intentionally uses any device to eavesdrop, whether or not he is present at the time. Eavesdropping means to overhear, record, amplify or transmit any part of the private communication of others without the consent of at least one of the persons engaged in the communication. |
| | | Note: under Al. Pub. Serv. Common Rule T-17(A)(3): "The following requirements apply to all automated solicitation telephone calls to consumers in the State of Alabama: . . . If the consumer's response is to be recorded, they must be informed of such and permission must be granted." |
| Alaska | One party | A person may not use an eavesdropping device to hear or record all or any part of an oral conversation without the consent of a party to the conversation. |
| | | This statute is clearly intended to prohibit third-party eavesdropping and is therefore not applicable to the situation where one of the participants recorded the conversation. Palmer v. State, 604 P.2d 1106 (Alaska 1979). |
| Arizona | One party | A person is guilty of a class 5 felony who intentionally intercepts a wire or electronic communication to which he is not a party, or aids or authorizes another to so do, without the consent of either a sender or receiver thereof. Not a crime to intercept wire communication if the interception is effected with the consent of a party to the communication or a person who is present during the communication. |
| Arkansas | One party | It shall be unlawful for a person to intercept a wire, landline, oral, telephonic communication, or wireless communication, and to record or possess a recording of such communication unless such a person is a party to the communication or one (1) of the parties to the communication has given prior consent to such interception and recording. |

| California | All parties | § 631 (Unauthorized wiretaps): Unlawful for any person to willfully and without the consent of all parties to a communication to attempt to learn the contents or meaning of any communication while the same is in transit over any wire within state of CA. |
| --- | --- | --- |
| | | |
| | | Case law: Eavesdropping by means of an extension telephone is outlawed by § 631. Montalti v Catanzariti, 191 Cal App 3d 96, 236 Cal Rptr 231 (1987, 2nd Dist). |
| | | |
| | | § 632 (Eavesdropping): Unlawful for any person to intentionally and without the consent of all parties to a confidential communication eavesdrop upon or record the confidential communication. |
| | | |
| | | Case law: § 632 prohibits one participant to a phone conversation from recording the conversation without knowledge or consent of the second participant. Forest E. Olson, Inc. v Superior Court of Los Angeles County, 63 Cal App 3d 188, 133 Cal Rptr 573 (1976, 2nd Dist). |
| | | |
| | | A conversation is confidential under § 632 if the circumstances objectively indicate that any participant reasonably expects and desires that the conversation will not be directly overheard or recorded by a nonparticipant. Shulman v Group W Productions, Inc., 18 Cal 4th 200, 74 Cal Rptr 2d 843, 955 P2d 469 (1998). |
| | | |
| | | § 632.7 (Eavesdropping on Calls Involving Wireless or Cordless Phones):  Unlawful for any person to intercept or record a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone without the consent of all parties. |
| | | |
| | | (Note:  Section 632.7 applies even if the communication is not "confidential") |
| | | |
| | | CA "all party consent" call monitoring law trumps other states' "one party consent" laws.  Kearney v. Salomon Smith Barney, Inc., 2006 Cal. LEXIS 8362. |

| Colorado | One party | (Wiretaps): Any person not a sender or intended receiver of a telephone communication commits wiretapping if he knowingly overhears or records a telephone communication without the consent of either a sender or a receiver thereof or attempts to do so. |
| | | |
| | | (Eavesdropping): Any person not visibly present during a conversation commits eavesdropping if he knowingly overhears or records such conversation or discussion without the consent of at least one of the principal parties thereto, or attempts to do so. |
| | | |
| | | Subjective and objective tests required to determine whether a person's conversation qualifies as protected oral communications. People v. Hart, 787 P.2d 186 (Colo. App. 1989). |
| | | |
| | | For "consent" to be valid, it must be voluntary and uncoerced. Sufficient to show knowledge of the monitoring setup. People v. Rivera, 765 P.2d 624 (Colo. App. 1988). |
| | | |
| Connecticut | All parties (but see conflict between "recording" provision in §52-570d and "wiretapping" provision in §53a-187 and related case law.) | Unlawful to use any device to record a private telephonic communication unless the use of such device (1) is preceded by consent of all parties to the communication (in writing or at start of recording); or (2) is preceded by verbal notification which is recorded; or (3) is accompanied by a warning tone which is repeated at regular intervals during such recording. |
| | | |
| | | A person is guilty of eavesdropping when he unlawfully engages in wiretapping or mechanical overhearing of a conversation. ("Wiretapping" means the intentional overhearing or recording of a telephonic communication by a person other than a sender or receiver thereof, without the consent of either the sender or receiver. "Mechanical overhearing of a conversation" means the intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto, by a person not present thereat.) |
| | | |
| | | CT eavesdropping statutes are violated only when neither party to the call knows that the call is being monitored. Since both parties to collect call conversations by prison inmates given notice of |

| | | |
|---|---|---|
| | | recording before call commences, no violation of eavesdropping rules. |
| | | Washington et al. v. Meachum, 238 Conn. 692; 680 A.2d 262 (1996). See also |
| | | Washington et al. v. Meachum, 1995 Conn. Super. LEXIS 849, *44-62 (Conn. Sup. Ct. |
| | | 1995) (discussing relationship among the State Wiretap Act, the Eavesdropping Statute, |
| | | and the Recording Act) ("[I]f a person recording a telephonic conversation satisfies the |
| | | requirements of § 52-570d(a), he has not committed "wiretapping" as defined in § 53a- |
| | | 187(a)(1)." (Unreported case). |
| | | |
| | | Although tape recording of CT resident done by NY resident in NY, Connecticut law was |
| | | controlling. Lord v. Lord, 2003 Conn. Super. LEXIS 1512 (Conn. Super. Ct. May 13 2003). |
| Delaware | One party | Generally, no person shall intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept any wire, oral or electronic communication. However, it is lawful for a person to intercept a wire, oral or electronic communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception. |
| DC | One party | Generally, unlawful to willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept any wire or oral communication. However, not unlawful for a person (not acting under color of law) to intercept a wire or oral communication, where such person is a party to the communication, or where one of the parties to the communication has given prior consent to such interception. |
| Florida | All parties | Not unlawful for a person to intercept a wire, oral, or electronic communication when all of the parties to the communication have given prior consent to such interception. |
| | | |

| | | Fla. Stat. ch. 934.03 (2)(d) prohibits a party to a conversation from recording this conversation without the consent of all parties to the conversation, provided the conversation is not public. State v. News-Press Publ'g. Co., 338 So. 2d 1313 (Fla. Dist. Ct. App. 2d Dist. 1976). |
|---|---|---|
| Georgia | One party | Generally, unlawful for any person intentionally and secretly to intercept by the use of any device the contents of a message sent by telephone. However, nothing shall prohibit a person from intercepting a wire, oral, or electronic communication where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception. |
| | | |
| | | Case law: The most reasonable interpretation of wiretapping/eavesdropping rules is that it should not apply to one who is a party to the conversation. Fetty v. State, 268 Ga. 365, 489 S.E.2d 813 (1997). |
| Hawaii | One party | It shall not be unlawful for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception. |
| | | |
| | | Above language explicitly allows the interception of a communication where a participant has given prior consent thereto. State v. Okubo, 3 Haw. App. 396, 651 P.2d 494 (1982), aff'd, 67 Haw. 197, 682 P.2d 79 (1984). |
| | | |
| | | Unlawful to intentionally intercept, without the consent of the sender or receiver, a message by telephone or other means of communicating privately, except for overhearing of messages through a regularly installed instrument on a telephone party line or an extension. |
| Idaho | One party | It is lawful for a person to intercept a wire, electronic or oral communication when one (1) of the parties to the communication has given prior consent to such interception. |

| Illinois | All parties (but see case law and business exemption) | A person commits the offense of eavesdropping when he knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so with the consent of all of the parties to such conversation or electronic communication. (Case law: the eavesdropping statute should not prohibit the recording of a conversation by a party to that conversation or one known by the parties thereto to be present. E.g., People v. Jansen, 203 Ill. App. 3d 985, 149 Ill. Dec. 34, 561 N.E.2d 312 (5 Dist. 1990)). |
|---|---|---|
| | | Except, it is lawful for a business doing marketing/opinion research or telephone solicitation to use a telephone monitoring device to record or listen to research/solicitation conversations by its employees when: (i) the monitoring is used for quality control, education or training, or internal research; and (ii) at least one person who is an active party to such conversation consents. |
| | | Note: Cannot share information obtained in such manner with law enforcement officials; must terminate any such recording or listening if conversation does not relate to research |
| | | or solicitation; all current and prospective employees of the business must be given notice |
| | | that monitoring/recording may take place; all such employees must have access to |
| | | personal-only use telephone lines not subject to monitoring or recording. |
| Indiana | One party | "Interception" means the intentional recording or acquisition of telephonic communication by a person other than a sender or receiver of that communication, without the consent of the sender or receiver, by means of any device. Unlawful to intercept communications without proper authorization or warrant. |
| Iowa | One party | It is not unlawful for a person not acting under color of law to intercept a wire, oral, or electronic communication if the person is a party to the communication or if one of the parties to the communication has given prior consent to the interception. |

| Kansas | One party | "Breach of privacy" is knowingly and without lawful authority intercepting, without the consent of the sender or receiver, a message by telephone or other means of private communication. (This does not apply to messages overheard through a regularly installed instrument on a telephone party line or on an extension.) |
| | | |
| | | Any party to private conversation may waive right of privacy and consent to electronic interception and recording; nonconsenting party cannot challenge. State v. Roudybush, 235 K. 834, 844, 686 P.2d 100 (1984). |
| | | |
| | | Privacy of communication not violated by electronic recording where consent of sender alone obtained. State v. Wigley, 210 K. 472, 474, 476, 502 P.2d 819. |
| Kentucky | One party | "Eavesdrop" means to overhear, record, amplify or transmit any part of a wire or oral communication of others without the consent of at least one party thereto by means of any electronic, mechanical or other device. |
| Louisiana | By statute: One party | Generally, prohibited for any person to willfully intercept any wire or oral communication. Exceptions include: a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception. |
| | By regulation: two party if recording takes place | |
| | | By LA PSC regulation: "Telephonic access lines used for solicitation purposes must do so pursuant to the following terms and conditions . . . if the customer's response is to be recorded, the customer must be informed of such and his permission granted. Recording of two-way telephone conversations must be in compliance with state and federal regulations." |
| Maine | One party | "Intercept" means to hear, record or aid another to hear or record the contents of any wire or oral communication through the use of any intercepting device by any person other than: A. The sender or receiver of that communication; B. A person within the range of normal unaided hearing or subnormal hearing corrected to not better than normal; or C. A person given prior authority by the sender or receiver. |

| Maryland | All parties | It is lawful under MD law for a person to intercept (using an electronic, mechanical, or other device) a communication where the person is a party to the communication and where all of the parties to the communication have given prior consent. |
| --- | --- | --- |
| | | "Electronic, mechanical, or other device" means any device other than telephone equipment, instrument or component thereof furnished to subscriber by a communication service and used by the subscriber in the ordinary course of its business, or furnished by the subscriber for connection to the telephone equipment/facilities and used in the ordinary course of its business. |
| | | Equipment that does nothing other than monitor and record, and does not enhance communication or advance the efficient use of a telecommunications system, is not exempt "telephone equipment." Schmerling v. Injured Workers' Ins. Fund, 368 Md. 434, 795 A.2d 715 (2002). |
| | | The plain meaning of the statutory text has been affirmed in Perry v. State, 357 Md. 37, 741 A.2d 1162 (1999), where the Court of Appeals of Maryland found that the meaning of the Maryland wiretap law is that no conversation may be willfully taped unless specifically allowed, and that § 10-402(c)(3) is the only provision that would allow a private person to intercept a wire communication. |
| | | "Interception" lawful only if all of the participants to the communication give their consent.  Adams v. State, 43 Md. App. 528, 406 A.2d 637 (1979), aff'd, 289 Md. 221, 424 A.2d 344 (1980). |
| Massachusetts | All parties (but see definition of "intercepting device" for ordinary course of business exemption.) | The term "interception" means to secretly hear, secretly record, or aid another to secretly hear/record, the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication. |

| | | |
|---|---|---|
| | | The term "intercepting device" means any device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire communication other than any telephone or telegraph instrument, equipment, facility, or a component thereof, (a) furnished to a subscriber or user by a communications common carrier in the ordinary course of its business under its tariff and being used by the subscriber or user in the ordinary course of its business; or (b) being used by a communications common carrier in the ordinary course of its business. |
| | | |
| | | Extension phone not "intercepting device" under 272 § 99(B)(3). Crosland v Horgan (1987) 401 Mass 271, 516 NE2d 147. |
| | | |
| | | Massachusetts wiretap statute requires both parties to consent to recording of telephone calls for recording to be legal. Commonwealth v Barboza 54 Mass App 99, 763 NE2d 547 |
| | | (2002). |
| | | |
| | | Secret recording of telephone conversation outside MA did not violate 272 § 99, even if |
| | | call originated in MA. Macneill Eng'g Co. v Trisport, Ltd. (1999, DC Mass) 73 F Supp 2d |
| | | 73 |
| | | |
| | | |
| Michigan | "Eavesdropping" by third party - all parties; recording by participant - one party (see case law.) | "Eavesdrop" or "eavesdropping" means to overhear, record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse. |
| | | |
| | | Any person who is present or who is not present during a private conversation and who willfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto, or who knowingly aids, employs or procures another person to do the same in violation of this section, is guilty of a felony. |
| | | |

| | | While a participant may record a conversation with apparent impunity, his sole consent is insufficient to make permissible the eavesdropping of a third party; thus, he may not employ a third party to record a conversation. Dickerson v. Raphael, 222 Mich App 185, 564 NW2d 85 (1997). |
|---|---|---|
| Minnesota | One party | It is not unlawful under MN law for a person not acting under color of law to intercept a wire, electronic, or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception. |
| Mississippi | One party | No person, agency of the state or political subdivision of the state, other than the Bureau of Narcotics, is authorized under MS law to own, possess, install, operate or monitor an electronic, mechanical or other device. |
| | | |
| | | Above rule shall not apply to a person who is a subscriber to a telephone operated by a communication common carrier and who intercepts a communication on a telephone to which he subscribes. |
| | | |
| | | Above rule shall not apply to a person not acting under color of law who intercepts a wire, oral or other communication if the person is a party to the communication, or if one of the parties to the communication has given prior consent to the interception. |
| Missouri | One party | It is not unlawful under Missouri wiretapping rules for a person not acting under law to intercept a wire communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception. |
| Montana | Two party (case law requiring only one-party consent appears to apply only in context of call involving a police officer.) | Illegal to knowingly record a conversation by use of a hidden electronic or mechanical device without the knowledge of all parties to the conversation; this rule, however, does not apply to persons given warning of the recording. (Note that term "conversation" appears to apply only to direct speaking, i.e., face to face, and not via a telephone wire.) |
| | | |
| | | Illegal to purposely intercept an electronic communication. This rule, however, does not apply to persons given warning of the interception. |

Pelican_00042

| | | |
|---|---|---|
| | | Case law: " . . . interception of telephone conversations by police officers is legal if one of the parties to the conversation consents, even an informer. This Court has never held that a court order is necessary to monitor a telephone conversation, where one of the parties to the telephone conversation consents." State v. Canon, 687 P.2d 705 (Mont. 1984). |
| | | " . . . if one party to a telephone conversation freely consents, the conversation can be electronically monitored and recorded without a warrant, and the evidence obtained is admissible in a subsequent criminal trial. This rule remains true even if the consenting party is an informant or a police officer." St. v. Brown, 755 P2d 1364, 45 St. Rep. 818 (1988). |
| Nebraska | One party (see ordinary course of business exemption as well) | Generally, unlawful to intercept any wire, electronic, or oral communication; however: |
| | | • it is not unlawful for an employer on his, her, or its business premises, for an operator of a switchboard, or for an officer, employee, or agent of any provider, the facilities of which are used in the transmission of a wire communication, to intercept, disclose, or use that communication in the normal course of his, her, or its employment while engaged in any activity which is a necessary incident to the rendition of his, her, or its service or to the protection of the rights or property of the carrier or provider of such communication services. Such employers and providers shall not utilize service observing or random monitoring except for mechanical, service quality, or performance control checks as long as reasonable notice of the policy of random monitoring is provided to their employees. |
| | | • it is not unlawful for a person not acting under color of law to intercept a wire, electronic, or oral communication when such person is a party to the communication or when one of the parties to the communication has given prior consent to such interception. |
| Nevada | One party | • it is unlawful for any person to intercept any wire communication unless the interception is made with the prior consent of one of the parties to the communication. |
| | | |

| | | |
|---|---|---|
| | | • a person shall not make any connection with the wire or radio communication facilities of any person engaged in the business of providing service and facilities for communication unless the connection is authorized by the person providing the service and facilities. |
| | | • a person shall not intrude upon the privacy of others by surreptitiously listening to, monitoring or recording, or attempting to listen to, monitor or record, by means of any mechanical, electronic or other listening device, any private conversation engaged in by the other persons, or disclose the existence, content, substance, purport, effect or meaning of any conversation so listened to, monitored or recorded, unless authorized to do so by one of the persons engaging in the conversation. |
| New Hampshire | All parties | "Intercept" means the acquisition of, or the recording of, the contents of any telecommunication or oral communication through the use of any electronic, mechanical, or other device. "Electronic, mechanical, or other device" means any device which can be used to intercept a telecommunication or oral communication other than: any telephone or telegraph instrument, equipment, facility or any component thereof furnished to the subscriber or user by a communication carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business. |
| | | A person violates NH law if, without the consent of all parties to the communication, the person: (a) willfully intercepts any telecommunication or oral communication; (b) willfully uses any electronic, mechanical, or other device to intercept any oral communication when: (i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in telecommunication; (ii) such use (A) takes place on |
| | | premises of any business or other commercial establishment, or (B) obtains or is for the |
| | | purpose of obtaining information relating to the operations of any business or other |
| | | commercial establishment. |

| New Jersey | One party | It shall not be unlawful for a person not acting under color of law to intercept a wire, electronic or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception. The fact that such person is the subscriber to a particular telephone does not constitute consent effective to authorize interception of communications among parties not including such person on that telephone. |
|---|---|---|
| | | Overhearing and recording a transaction by means of a regularly installed extension telephone was not a proscribed interception. State v. McDermott, 167 N.J. Super. 271, 400 A.2d 830, (N.J. Super. Ct. 1979). |
| | | NJ state wiretapping law applies even where the wire or oral communication that was intercepted originated outside of New Jersey if the law enforcement officer directing the interception acted under state authority. State v. Worthy, 273 N.J. Super. 147, 641 A.2d 282, (N.J. Super. Ct. App. Div. 1994). |
| New Mexico | One party | Interference with communications consists of knowingly and without lawful authority reading, interrupting, taking or copying any message, communication or report intended for another by telegraph or telephone without the consent of a sender or intended recipient thereof. |
| New York | General Rule:  One party<br><br>Telemarketing calls:  all parties | "Wiretapping" means the intentional overhearing or recording of a telephonic communication by a person other than a sender or receiver thereof, without the consent of either the sender or receiver, by means of any instrument, device or equipment. |
| | | "Mechanical overhearing of a conversation" means the intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto, by a person not present thereat, by means of any instrument, device or equipment. |
| | | "Intercepting or accessing of an electronic communication" and "intentionally intercepted or accessed" mean the intentional acquiring, receiving, collecting, overhearing, or recording of an electronic communication, without the consent of the sender or |

| | | |
|---|---|---|
| | | intended receiver thereof, by means of any instrument, device or equipment.<br><br>Telemarketers must disclose, at the beginning of each telemarketing call, whether the call is being recorded. |
| North Carolina | One party | A person violates NC law if, without the consent of at least one party to the communication, the person willfully intercepts any wire, oral, or electronic communication. |
| North Dakota | One party | A person is guilty of a class C felony if he intentionally intercepts any wire or oral communication by use of any electronic, mechanical, or other device; or intentionally discloses to any other person or intentionally uses the contents of any wire or oral communication, knowing that the information was obtained through the interception of a wire or oral communication. |
| | | It is a defense to the above that the actor was a party to the communication or one of the parties to the communication had given prior consent to such interception. |
| Ohio | One party | Ohio rules against interception of wire communications do not apply to a person who is not a law enforcement officer and who intercepts a wire, oral, or electronic communication, if the person is a party to the communication or if one of the parties to the communication has given the person prior consent to the interception. |
| Oklahoma | One party | It is not unlawful under the OK Security of Communications Act for a person not acting under color of law to intercept a wire, oral or electronic communication when such person is a party to the communication or when one of the parties to the communication has given prior consent to such interception unless the communication is intercepted for the purpose of committing any criminal act. |
| | | Case law: Wiretap tapes made in Virginia regarding defendant were admissible in his Oklahoma prosecution for battery because the Virginia police were in full compliance with Virginia law when they made the recordings; thus, the tapes were authorized. Frick v. State, 634 P.2d 738 (Okla. Crim. App. Sept. 18, 1981). |
| Oregon | One party | No person shall: |
| | | |

| | | |
|---|---|---|
| | | • Obtain or attempt to obtain the whole or any part of a telecommunication or a radio communication to which such person is not a participant by means of any device unless consent is given by at least one participant. |
| | | • Obtain the whole or any part of a conversation, telecommunication or radio communication from any person, while knowing or having good reason to believe that such conversation, telecommunication or radio communication was initially obtained in a manner prohibited by this section. |
| | | Interception of communications: any person who willfully intercepts, attempts to intercept or procures any other person to intercept or attempt to intercept any wire or oral communication where such person is not a party to the communication and where none of the parties to the communication has given prior consent to the interception, is guilty of a Class A misdemeanor (certain exceptions apply). |
| Pennsylvania | Two party consent (but see specific exemption for recording/intercepting for quality control/training purposes). | Illegal in PA to intentionally intercept any wire, electronic or oral communication; not unlawful for a person, to intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception. |
| | | Specific teleservices exemption: Not unlawful for the personnel of a business engaged in telephone marketing or telephone customer service by means of wire, oral or electronic communication to intercept such marketing or customer service communications where such interception is made for the sole purpose of training, quality control or monitoring by the business, provided that one party involved in the communications has consented to such intercept. Any communications recorded pursuant to this paragraph may only be used by the business for the purpose of training or quality control. Unless otherwise required by Federal or State law, communications recorded pursuant to this paragraph shall be destroyed within one year from the date of recording. |
| Rhode Island | One party | Not a violation of RI unauthorized interception rules for a person not acting under color of law to intercept a wire, electronic, or oral communication, where the person is a party to the communication, or one of the |

| | | |
|---|---|---|
| | | parties to the communication has given prior consent to the interception. |
| South Carolina | One party | Not a violation under SC interception of communication rules for a person not acting under color of law to intercept a wire, oral, or electronic communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception. |
| South Dakota | One party | A person is guilty of a felony who being: |
| | | • Not a sender or receiver of a telephone or telegraph communication, knowingly and by means of an instrument or device overhears or records a telephone or telegraph communication, or aids, authorizes, employs, procures or permits another to so do, without the consent of either a sender or receiver thereof; |
| | | • Not present during a conversation or discussion, knowingly and by means of an instrument or device overhears or records such conversation or discussion, or aids, authorizes, employs, procures or permits another to so do, without the consent of a party to such conversation or discussion. |
| | | The consent of one party to the recording of a communication takes that communication out of the scope of SD interception/recording rules. State v. Braddock, 452 NW 2d 785 (1990). |
| Tennessee | One party | It is lawful under TN wiretapping rules for a person not acting under color of law to intercept a wire, oral, or electronic communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception. |
| | | A person commits an offense who, without the consent of at least one party to a communication, intentionally records or disseminates a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, or a cordless telephone and a cellular radio telephone. |

| Texas | One party | It is an affirmative defense to prosecution under TX Wire Interception rules that a person not acting under color of law intercepts a wire, oral, or electronic communication, if the person is a party to the communication; or one of the parties to the communication has given prior consent to the interception. |
|---|---|---|
| Utah | One party | A person commits communication abuse if, except as authorized by law: (a) he intercepts, without the consent of the sender or receiver, a message by telephone (this rule does not extend to overhearing of messages through a regularly installed instrument on a telephone party line or on an extension); (b) divulges without consent of the sender or receiver the existence or contents of any such message if the actor knows that the message was illegally intercepted or if he learned of the message in the course of employment with an agency engaged in transmitting it. |
| | | |
| | | Not a violation of UT Interception of Communication rules for a person not acting under color of law to intercept a wire, electronic, or oral communication if that person is a party to the communication or one of the parties to the communication has given prior consent to the interception. |
| Virginia | One party | Any person who: 1. Intentionally intercepts, endeavors to intercept or procures any other person to intercept or endeavor to intercept, any wire, electronic or oral communication; 2. Intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical or other device to intercept any oral communication; 3. Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, electronic or oral communication knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or 4. Intentionally uses, or endeavors to use, the contents of any wire, electronic or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; shall be guilty of a Class 6 felony. |
| | | |

Pelican_00049

| | | It shall not be a criminal offense under this chapter for a person to intercept a wire, electronic or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception. |
|---|---|---|
| Washington | Both parties (query as to whether telemarketing call is "private" under WA law.) | Unlawful for any individual, partnership, corporation, or association to intercept or record any private communication transmitted by telephone or other device between two or more individuals between points within or without the state by any device designed to record and/or transmit said communication, without first obtaining the consent of all the participants in the communication. |
| | | Consent shall be considered obtained whenever one party has announced to all other parties engaged in the communication that such communication is about to be recorded or transmitted, provided, that if the conversation is to be recorded that said announcement shall also be recorded. |
| | | Consent to taped conversation need not appear on the tape so long as the announcement that the conversation is being taped is on the tape. State v. Rupe, 101 Wn.2d 664, 683 P.2d 571 (1984). |
| | | To determine whether or not a telephone conversation is "private," the court must consider the intent or reasonable expectations of the participants as manifested by the facts and circumstances of each case. State v. Forrester, 21 Wn. App. 855, 861, 587 P.2d 179 (1978). |
| West Virginia | One party | It is unlawful for any person, firm or corporation to intercept or monitor, or to attempt to intercept or monitor, the transmission of any communication by telephone between an employee or similar agent of such person, firm or corporation and a customer of such person, firm or corporation unless such person, firm or corporation does all of the following: (1) notifies each employee or agent subject to interception or monitoring that their telephone messages are subject to interception or monitoring; and (2) provides telephone |

Pelican_00050

| | | |
|---|---|---|
| | | instruments for employee's personal use which are not subject to intercepting or monitoring. |
| | | |
| | | It is lawful under the WV Wiretapping rules for a person to intercept a wire, oral or electronic communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception. |
| Wisconsin | One party | It is not unlawful under WI Interception of Wire Communication rules for a person not acting under color of law to intercept a wire, electronic or oral communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception. |
| Wyoming | One party | Lawful under WY Communication Interception rules for a person to intercept an oral, wire or electronic communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception. |
| Federal Rules | One party | Under Title III of the Omnibus Crime Control and Safe Streets Act of 1968: |
| | | • "Intercept" means the acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device. |
| | | • "Electronic, mechanical, or other device" means any device which can be used to intercept a wire, oral, or electronic communication other than any telephone or telegraph instrument, equipment or facility, or any component thereof furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business, or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business. |

| | | |
|---|---|---|
| | | • It shall not be unlawful for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception |
| | | |
| | | Case law: |
| | | An employer might, in the ordinary course of business, validly intercept an employee's calls in order to deter the employee's use of the business line for personal calls. Watkins v. L. N. Berry & Co., 704 F.2d 577 (11th Cir. 1983). |
| | | |
| | | Two prongs required to meet "ordinary course of business" exemption. First, device must constitute a "telephone or telegraph instrument, equipment or facility, or a component thereof" either provided by, and installed by, a provider of communication service in the ordinary course of its business, or supplied by subscriber/user for connection to provider's facilities; second, subscriber/user's use of the device must fall within the ordinary course of its business. Sanders v Robert Bosch Corp. (1994, CA4 SC) 38 F3d 736. |
| | | Applicability of 18 USCS § 2511 is determined by where interception took place rather than route followed by communications. United States v Cotroni (1975, CA2 NY) 527 F2d 708. |
| | | |

Pelican_00052

## C. COMPLIANCE FORMS FOR EMPLOYEE TRAINING & ORIENTATION

To help ensure consistency and compliance, Pelican will utilize and distribute a standard orientation packet.  Contained within the next several pages are forms covering Legislative and Quality issues.  These (or similar) forms will be reviewed in detail during the initial training and copies of the signed forms kept in each employee file.

1. Telemarketing Training Acknowledgement Form
2. Copies of TSR & TCPA summary
3. Telephone Representative DNC Procedures Acknowledgment Form
4. Confidentiality of Consumer Information Agreement
5. Quality Agreement
6. Consent to Record Form (or Authorization to Monitor and Record Calls)

Sample copies of these forms have been provided on the following pages.  Actual forms may vary slightly in design or content.

Pelican_00053

**1.  Telemarketing Training Acknowledgement Form**

# Telemarketing Training Acknowledgment Form

This is to acknowledge that I have undergone training pertaining to telemarketing laws, where the topics taken were covered:

- The Telephone Consumer Protection Act of the FCC
- The Telephone Sales Rule of the FTC
- Do Not Call Lists (DNC)
- Consumer DNC requests
- Established Business Relationships
- Call Time Restrictions
- Call Recording Requirements
- Caller ID
- Abandonment Rate
- Permission to Continue and No Rebuttal States
- Items for Prompt Disclosure
- Anti-Harassment Policy

By affixing my signature to this document, I state that I fully understand the details of the Telemarketing laws training and am aware of the repercussions that may arise as a result of non-compliance of the rules and policies discussed within the training.

Signed this day, _____, 20__

_____
Signature over printed name

| 2. TSR & TCPA Summaries |
| --- |

## TELEMARKETING SALES RULE (FTC)

### MAIN REQUIREMENTS

#### PROPER IDENTIFICATION (Outbound Calls)

Promptly disclose in a clear and conspicuous manner:
Identity of the seller;
Purpose of the call (goods, services); and
Transmission of telephone number and Pelican when using a service provider that makes Caller ID capabilities available.

#### CALLING HOUR RESTRICTIONS

No calls to a private residence before 8:00 a.m. or after 9:00 p.m. (local time at called party's location). NOTE: See state laws for other restrictions.

#### REQUIRED INFORMATION TO CONSUMERS BEFORE THEY ARE REQUIRED TO PAY FOR GOODS/SERVICES SUBJECT TO SALES OFFER

Cost and quantity;
Any material restrictions, limitations or conditions to purchase, receive or use goods or services; and
Refund policy if applicable.

#### "DO-NOT-CALL POLICIES"

Sellers may not call a consumer who has requested to receive no more calls from or on behalf of, the particular goods/services being offered;
Sellers must maintain "Do-Not-Call" lists of those consumers who do not wish to be contacted by phone;
Sellers must develop a written policy implementing this "Do-Not-Call" list keeping requirements AND TRAIN its telemarketing personnel in these procedures; and
Adherence to National Do Not Call Registry.

#### CALL ABANDONMENT

Call abandonment is a violation of the rule. Safe harbor allows up to a three (3) % abandonment rate if meeting certain requirements.

#### PROHIBITED PRACTICES

It is a violation of the rule to engage in threats, intimidation or the use of profane or obscene language.

My supervisor has reviewed the above summary of the Telemarketing Sales Rule with me and I have been given a copy of it for my records.

_____  _____
Sales representative signature            Date


_____        _____
Supervisor signature                           Date

## TCPA/TELEPHONE CONSUMER PROTECTION ACT OF 1991 (FCC)

**MAIN REQUIREMENTS**

**PROPER IDENTIFICATION (Outbound Calls)**

Name of individual making call;
Name of business or individual on whose behalf the call is being made; and
Telephone number or address at which the person or entity may be contacted.

**CALLING HOUR RESTRICTIONS**

No calls to a private residence before 8:00 a.m. or after 9:00 p.m. (local time at called party's location).  **Note:  See state laws for other restrictions.**

**"DO-NOT-CALL" POLICIES**

TCPA requires companies to maintain a list of those people who do not wish to be contacted by phone and to develop a WRITTEN policy implementing this requirement and these written procedures must be available to anyone on demand.

My supervisor has reviewed the above summary of the Telephone Consumer Protection Act with me and I have been given a copy of it for my records.

_____   _____
Sales representative signature          Date


_____   _____
Supervisor signature                         Date

3.   **Telephone Representative Do Not Call Procedures Acknowledgement Form**

**TELEPHONE REPRESENTATIVE DO NOT CALL PROCEDURES**

INTRODUCTION

It is the intention of Pelican, its affiliates, managers, employees and agents to maintain the highest standards possible in the course of its business.  Toward this end, Pelican does not intend to violate the privacy rights or wishes of any person who does not want to be called by our organization.  The following policy is mandatory in all solicitations and campaigns by our company.

SALES REPRESENTATIVE TRAINING

Federal and state laws, as well as Pelican corporate policies and procedures, require Pelican to establish a DNC Policy, maintain an internal DNC list and train all telephone representatives with respect to both.

CHILD PROTECTION/ SENSITIVITY

Pelican does not market to children, and exercises policies of extreme caution in all matters concerning children.  The purpose of our call is to speak with qualified borrowers only.  Pelican policy provides that the only time a telephone representative can speak to a child is when a child answers the phone, at which time the representative is instructed to immediately ask for the adult whose name appears on the representative's computer screen.  Telephone representatives are prohibited from engaging in phone conversations with children at any time

Important Note:  If a child answers the phone, and says the label person is not there, the appropriate telephone representative response is "I'll just call back later.  Thank you.  Goodbye."

Under no conditions is a telephone representative permitted to ask the child when his/her parents will be home, or when a better time to call would be.

DO NOT CALL REQUESTS

A DNC request is when a customer or non-customer informs us orally or in written form that he or she does not want to receive any telemarketing calls from Pelican.  The specific reason or severity of the tone of the request is not important.  ALL REQUESTS MUST BE HONORED.

Any of the following customer responses require that the telephone representatives must enter a Do Not Call disposition:

- "Take me off your calling list."
- "Don't ever call me again."
- "Stop calling me."
- "Don't call back."

Pelican_00057

**What to say when the customer requests to be placed on the Pelican Do Not Call list:**

**Outbound Call:**

"Mr(s)._____, please excuse this call, I will arrange to have your name removed from the calling list."

**Inbound Call:**

"Mr(s)._____, thank you for bringing the matter to our attention.  We apologize for any inconvenience that we may have caused.  We will remove your name and number from our calling list."

**If the customer states that they have already told us to remove their name from the list:**

**Outbound Call:**

"Mr(s)._____, your name must have been given to me by mistake.  I am sorry for the inconvenience.  I will have my manager immediately contact our customer service department so that we will not bother you again."

**Inbound Call:**

"Mr(s)._____, I apologize for the inconvenience.  I will have my manager immediately contact our customer service department so that we will not bother you again."

**Established Business Relationship (EBR) Calls:**

During calling campaigns to our existing customers or those who have inquired about our products or services, someone may express concern that we are calling them even though they have placed their number on the national or state DNC list.  Many consumers do not understand that calls to them are exempt (within regulatory parameters) from the DNC rules as long as they have not previously asked to be placed on our company-specific DNC list. If a consumer expresses this concern you should respond in the following manner:

"Mr(s). _____, I am calling you today because you are one of our valued customers.  The Do Not Call regulations allow us to call our existing customers even though your number may be on the national or state DNC list. However, you may request to be placed on our company-specific DNC list. If you do so, we will not contact you again."

**Request for Do Not Call Policy**

Any consumer who requests a copy of this our Do Not Call policy is entitled to receive it as soon as possible.  Any requests for a copy of our Do Not Call policy should be answered as follows:

"Mr(s)._____ we will be happy to send a copy of our Do Not Call policy to you.  This request needs to be forwarded through my manager.  Please let me confirm your address.  We have it as _____.  Thank you for your interest."

Pelican_00058

**Completion of Appropriate Forms (used in cases where a direct DNC removal methodology is not available to advisors)**

- Neatly print consumers name and address in appropriate section of the Do Not Call form (See attachment);
- Fill in area code and phone number;
- Print current date in the correct box;
- Fill in your name in the proper space; and
- Turn form over to supervisor for approval.

The form must be filled out completely and legibly in order for the individual to be removed from our calling list.

My supervisor has reviewed Pelican Do Not Call policies and procedures with me and I understand that I am expected to abide completely with these policies and procedures.  I have also been given a copy of these policies and procedures for my records.

_____     _____     _____     _____
Employee signature              Date            Supervisor signature         Date

_____
Employee printed Name

Pelican_00059

**4.  Confidentiality of Consumer Information Agreement**

### CONFIDENTIALITY OF CONSUMER INFORMATION AGREEMENT

I, _____, hereby acknowledge that, as a representative of Pelican Investment Holdings (Pelican), I have access to and receive certain Personal Information relating to consumers.  This Personal Information includes, but is not limited to, names, addresses, and telephone numbers.  I agree that all such Personal Information is confidential and proprietary to Pelican.

Accordingly, I agree:

1) To protect and preserve the confidentiality and proprietary nature of all Personal Information;

2) To not disclose, give, sell, make any records or copies of, otherwise transfer to make available, directly or indirectly, any Personal Information to any third party;

3) Not to use the Personal Information except as expressly authorized by Pelican; and

4) To disclose to Pelican if I become aware of any other person who may have violated this agreement.

I understand that if I should breach this Confidentiality Agreement or misuse any consumer's Personal Information, I am subject to immediate termination.  I also understand that identity theft is a felony and that if I commit such crime, I may be subject to legal action.

_____          _____
Name                                                           Date


_____
Signature

Pelican_00060

| 5.  Quality Agreement |
|---|

**QUALITY AGREEMENT**

Please read carefully the quality standards listed below.  It is expected as a representative of Pelican Investment Holdings (Pelican) you will abide by these standards and always represent Pelican to the highest standard. If you do not understand any part of this agreement, please consult with supervision before signing.

- Always be focused and prepared for each call.

- Proper identification of yourself and Pelican must be done on each call as outlined in the introduction of scripting provided.

- Always identify yourself with First and Last name.

- Consumers will be addressed using Mr. / Mrs. / Ms. salutation.  Never address the consumer by first name only.

- There are certain state laws that require seeking permission to continue and ending calls immediately after an objection is given as out lined in the scripting provided.

- Always be polite and courteous with consumers, regardless of their response or disposition.

- Never mislead through errors or omission of information.  Ask a supervisor if you are not completely sure of any information.

- Adhere to Pelican direction regarding Do Not Call (DNC) Policy requests, utilizing scripting provided to acknowledge all requests and disposition the call correctly.

- Talking between calls must be limited.  Inappropriate discussions or comments regarding the disposition of the consumer will not be tolerated.

- The scripted confirmation must be read verbatim on every sale so the consumer understands and accepts the offer and billing process.

- Every call is ended in a pleasant manner utilizing the appropriate "Non-sale close" or "Tagline" as directed within the scripting provided.

- Proper representation of Pelican:  Questions regarding who we are and whom you work for will be answered correctly.

- Always be empathetic to consumer complaints.  Irate / concerned consumers should be handled by supervisors.

- Overall phone courtesy.  This is a "common sense" issue.  No profanity, slang, inappropriate comments or unprofessional behavior during and between calls.

- Not home responses – Ask for a good time to call back unless the call is answered by a child.  Always be polite and professional when speaking with the spouse or adult non-decision maker within the household.  We want to avoid calling around the same time daily if we were informed of the best time to reach the decision maker.

Pelican_00061

- Correct Dispositions:  Be careful to disposition calls correctly. Human error can occur, however the impact of a repeat call to a consumer can result in complaints and requests to be removed from our calling list(s).

- Hang-ups:  telephone sales representatives should be sensitive to this concern and take special care to ensure they are not disconnecting calls before the consumer hangs up and are disconnecting calls when an answering system picks-up.

As a telephone representative of Pelican I have read and fully understand the standards outlined above.  I am aware that any deviation from this agreement outlined above will result in corrective action, up to and including termination.

_____    _____
Sales representative signature          Date

_____
Sales representative printed name

_____ _____
Supervisor signature                        Date

Pelican_00062

**6.  Consent to Record**

RE: Authorization to Monitor and Record Calls

To All Pelican Investment Holdings, LLC Employees:

For quality assurance and training purposes, we monitoring and record all inbound and outbound phone calls on any company-owned and or operated phone including land based and/or on a company-provided mobile device.

Thus, by signing below, you acknowledge that you understand this policy and authorize the company to monitor and record all such calls.

_____    _____

Employee Signature                                  Date

_____

Employee Printed Name

Pelican_00063

# Pelican Investment Holdings
## Telemarketing Safe Harbor Compliance Manual

### Federal Compliance with TCPA and TSR

- Outbound Calling = call initiated by telemarketing to consumer

    - Can only call between 8am through 9pm within that State's time zone (some States are more restrictive)

    - No abusive telemarketing acts or practices

        - Misrepresentations are prohibited (especially for material information)

        - Must transmit phone number to consumer's caller ID

    - Prompt Oral Disclosures in Outbound Sales Calls (and upselling)… Prompt means before any sales pitch is given (or within 2 seconds after the completed prerecorded greeting and sales representative is not yet available to speak).

        - Disclosures needed before any sales pitch (must be truthful, clear and conspicuous)

            - (i) identity of seller

            - (ii) purpose of the call is to sell goods/services

            - (ii) nature of the goods/services being offered

    - Material information that must be disclosed (can be provided orally or in writing. Must be truthful and in a clear and conspicuous manner – "information is presented in a way that is difficult to miss and that ordinary consumers will easily notice and understand, so that required disclosures are communicated as effectively as the sales message"):

        - (i) Cost and quantity

        - (ii) Material restrictions, limitations, or conditions

        - (iii) refund policy

            - Must disclose refund or cancellation policy if statement about the refund or cancellation policy is made during pitch

            - If not mentioned during pitch, must be disclosed if there is no-refund policy (can be orally or in writing so long as clear and conspicuous)

        - IF IN WRITING

            - Same language as the sale offer

            - Font size that a consumer can readily see and understand

Page 2

- Same emphasis and degree of contrasts with background as sales offer

- Cannot be buried on the back or bottom or in unrelated information that an ordinary consumer wouldn't think important to read

- **If follow up call, disclosures must be sent close enough to time of call so the consumer associates the call with the written disclosures**

▪ IF ORAL

- Understandable pace and speed

- Same language, tone, and volume so ordinary consumer can easily hear and understand

- Must do prompt disclosure of information

- No misreps

- Disclose material information

o Expressed informed consent is required for every transaction

▪ Express verifiable authorization is required for all payments that aren't CC or debit (not required for checks, money orders, cash, or direct billing)

- Can be paper or electronic (including internet, phone keypress, or recording of oral consent)

o Advance written authorization from the consumer (must have consumer signature)

o Oral authorization

▪ Requirements: What is being purchased, number of charges or payments, date payments will be submitted/processed, total amount of payments, consumers name, consumer's billing information, telephone number that a consumer can call with questions during normal business hours, date of consumer's oral authorization

▪ (consumer agrees to the purchase of the specific goods/services, understands the payments, and provides specific account information as to where the charge shall be made)

o Do Not Call List

▪ Must register and keep most updated National DNC list

▪ Must create company specific DNC list

Pelican_00065

Page 3

- Cannot call numbers on either list

- Must synchronize company list with National list at least every 3 months

- Should set up safe harbor provisions to protect against erroneous calls

  - Establish and implement written procedures to honor consumer's DNC requests

  - Training personnel and vendors on procedures for company and federal compliance

  - Maintaining and recording entity specific DNC

  - Process to prevent calls to DNC list (both firm and national) and maintains records that document (e.g. updating with national every 3 months

  - Robocalls

    - Can only perform if

      - (i) obtain prior express written consent. An 'established business relationship' does not exempt the express consent requirement.

        - Written consent must contain:

          - That consumer is willing to receive calls

          - Specific number to call consumer (allowing consumer to designate this number)

          - Consumers signature (can be e-signed)

          - Can only be used to by specific seller to call consumer

        - Consent must be for calling or texting and cannot be a condition of a sale or commercial transaction (consumers can take back their permission in any reasonable way – mailing in form cannot be the only way to revoke)

      - (ii) must provide an automated, interactive "opt-out" mechanism during each robocall so consumers can immediately tell telemarketer to stop calling

    - Required Disclosures

      - (i) at the beginning of the message – ***state clearly the identity*** of the business, individual, or other entity ***initiating the call***

      - (ii) ***state clearly the telephone number or address*** of such business, other entity, or individual

Page 4

- (iii) must end call within 5 seconds of consumer hanging up

  - Agent must be available within 2 seconds of consumer's live answer (or have a recorded message stating name and number of caller)

  - Can call a wrong number once before updating their personal list

  o Abandonment

    - Must give consumer sufficient time to answer (15 seconds or 4 rings) before hanging up. Abandonment cannot exceed 3% of calls placed. Percentage is calculated on a 30 day basis for each specific calling campaign.

  o Records must be kept regarding all calls and transactions for up to 2 years


Text/SMS message: These also require express written consent if using a system to transmit multiple messages.

*Revocation of Consent*: Consumers can revoke consent to receive calls and text messages "in any reasonable way at any time. (i.e. if they text back, stop texting, or if they tell you over the phone to stop calling or please be taken off the list, you must heed their request. There aren't "magic words" as long as they convey that they don't want to be contacted in the future.


A state chart showing relevant laws is provided. In terms of Mini-TCPA, for most states, as long as the company has express written consent per Federal TCPA, the company is protected. In some instances, states are stricter regarding pre-recorded messages.

Pelican_00067

### State Specific Requirements (if specifics are not provided, follow federal rules)

| States | State Requirements |
|---|---|
| Alabama | <ul><li>Must obtain license (commercial telephone seller) to do business in the state: https://ago.igovsolution.com/online/Initialapplication/AGO_Telephone.aspx</li><li>National DNC List</li><li>==Similar prompt disclosures== (within first 30 seconds of call) ==and DNC requirements as federal law== via ==State statute 8-19A-12==<ul><li>must provide cancellation rights (full refund up to 7 days after execution), state licensed registration number for company and salesperson if sale is completed</li></ul></li><li>Other disclosures must provide material information</li><li>Oral agreement must follow with a Written Contract to be finalized (requirements ==via 8-19A-14== are similar to federal law)</li></ul> |
| Alaska | <ul><li>Must register with Department of Law prior to telemarketing business in State: http://www.law.alaska.gov/department/civil/consumer/telemarketreg.html</li><li>National DNC list</li><li>==Follows similar rules for prompt disclosures, material information, etc. as Federal laws==</li><li>Prohibits a telemarketer from soliciting payment from a consumer until after the telemarketer receives from the consumer a signed, written contract for the purchase (with 7 day cancellation verbiage) ***This means that the telemarketer may not ask for consumer's credit card number over the phone unless consumer has signed a written contract***.</li><li>Prohibits a telemarketer from obtaining from a buyer a waiver of the buyer's rights under the telemarketing law</li></ul> |
| Arizona | <ul><li>Must Register to do telemarketing business in State: https://www.azsos.gov/business/telephonic-seller-registration</li><li>National DNC list</li><li>==Follows similar rules for prompt disclosures, material information, etc. as Federal laws==</li></ul> |

Page 6

| | • Right to cancel within 3 days after receiving - must be orally and in writing |
|---|---|
| Arkansas | • Must register as a telephonic seller and salesperson to do business in State: https://www.sos.arkansas.gov/business-commercial-services-bcs/nonprofit-charitable-entities/charitable-entities<br><br>• National DNC list<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark> |
| California | • Must register as telephonic seller: https://oag.ca.gov/consumers/general/telreg<br><br>• National DNC list<br><br>• <mark>Follows same rules for prompt disclosures, material information, etc. as Federal laws</mark> |
| Colorado | • Must register as a telemarketer: https://www.coag.gov/sites/default/files/contentuploads/cp/ConsumerFraud/telemarketing_registration_application-colorado.pdf<br><br>• State DNC list (and National DNC list)<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws.</mark><br><br>• 3 day cancellation rights to be disclosed on call and in writing. |
| Connecticut | • General Business registration<br><br>• National DNC list<br><br>• Calls allowed between 9am through 9pm<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws.</mark><br><br>• <span style="color:red">Mini-TCPA: No "text or media message" can be sent without prior express written consent. Such messages include those containing "written, audio, video or photographic content and is sent electronically to a mobile telephone or mobile electronic device, but does not include electronic mail sent to an electronic mail address." (CT Gen. Stat. 42-288a). [Cannot use a device which transmits an unsolicited recorded telephone message for any commercial, business or advertising purpose to any telephone customer in the state and which continues</span> |

| | the call and message after the customer hangs up the receiver.] |
|---|---|
| Delaware | • Must register as a telemarketer: https://attorneygeneral.delaware.gov/fraud/cpu/telemarketing/<br><br>• National DNC list<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark><br><br>• Right to cancel within 7 days must be told to consumer<br><br>• Must get express consent from consumer before billing charges |
| District of Columbia | • Mini-TCPA: Cannot use an automated dialing, push-button, or tone-activated address signaling telephone system with a prerecorded message for the sole purpose of:<br><br>(A) Soliciting a person over the telephone to purchase or lease goods, services, or real property; or<br><br>(B) Requesting survey information over the telephone where results are to be used directly for the purpose of soliciting a person to purchase or lease goods, services, or real property.<br><br>• This section does not apply if a person has a preexisting business relationship with the party called and the call concerns goods, services, or real property that have been previously ordered or purchased. |
| Florida | • Must register company and salespeople as telemarketers: https://www.freshfromflorida.com/Business-Services/Telemarketing<br><br>• State DNC list (and National DNC list)<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark><br><br>• Written contract is required and must match description during solicitation call |
| Georgia | • General Business registration<br><br>• National DNC list<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal</mark> |

Page 8

| | |
|---|---|
| | <mark>laws</mark><br><br>• <span style="color:red">Mini-TCPA: Cannot use an autodialer that sends prerecorded messages unless it is designed to disconnect within 10 seconds after termination of the telephone call by the subscriber. Cannot use autodialing equipment that uses a random or sequential number generator unless the device is designed and operated so as to exclude calls to: (1) emergency numbers, (2) guest rooms at hospital, health care facility, (3) a paging service, cellular telephone service, or DNC list numbers. (need consent, too)</span> |
| Hawaii | • General Business registration<br><br>• National DNC list<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark> |
| Idaho | • Must register as a telephone solicitor: http://www.ag.idaho.gov/consumerProtection/telephoneSolicitors/telephoneSolicitorIndex.html<br><br>• National DNC list<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark> |
| Illinois | • General Business registration<br><br>• National DNC list<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark><br><br>• <span style="color:red">Calls should not be made between 9 p.m. and 9 a.m.</span> |
| Indiana | • Must register as a telemarketer: http://www.in.gov/attorneygeneral/2663.htm<br><br>• State DNC list (and National DNC list)<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark><br><br>• <span style="color:red">Mini-TCPA: If using pre-recorded call, system must disconnect within 10 seconds of termination of the call by the consumer.</span> |
| Iowa | • General Business Registration |

| | |
|---|---|
| | • National DNC list<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark><br><br>• Mini-TCPA: relates to prerecorded messages and prohibits them with certain exceptions:<br><br>(1)  Calls made relating to payment for, service of, or warranty coverage of previously ordered or purchased goods or services or to persons or organizations with a prior business relationship with the persons or organizations using the calls.<br><br>(2)Calls made relating to the collection of lawful debts.<br><br>(3)Calls made to members or employees of the organization making the calls.<br><br>(4)Calls made which use an initial prerecorded message of a duration no greater than seven seconds prior to a live operator intercept, or calls which involve an initial message from a live operator. |
| Kansas | • General Business Registration<br><br>• National DNC list<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark> |
| Kentucky | • Must register as telemarketing company: http://nocall.ky.gov/tmannualreg.asp<br><br>• National DNC list<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark><br><br>• Telemarketing calls allowed between 10am through 9pm. (§ 367.46955(16)).<br><br>• Mini-TCPA: Cannot make prerecorded calls unless all of the following occurs-<br><br>(1)  Person consents to receiving such calls<br><br>(2)  Recorded message clearly states name and # of organization calling within 25 seconds of message and at conclusion of message. The number should be answered by company calling during normal business hours<br><br>(3)  Automated call disconnects within 10 seconds after person called fails to |

| | consent to hear message or hangs up phone. |
|---|---|
| | (4) Cannot randomly or sequentially dial numbers, call numbers omitted from telephone directory at consumer's request, and cannot call hospitals and healthcare facilities. |
| | (5) Cannot make prerecorded calls outside of 8 a.m. through 9 p.m. |
| | (6) The system does not make calls unless it is attended by a live person. |
| Louisiana | • Must register as telephonic solicitation seller: https://www.ag.state.la.us/Article.aspx/34?catId=0 |
| | • State DNC list (and National DNC) |
| | • Calls allowed between 8am through 8pm (Monday through Saturday; no calls on Sundays or legal holidays). (LA 45:811(2))… also LC Code 45:844.31) |
| | • Mini-TCPA: relates to pre-recorded calls. Aside from standard TCPA requirements, also |
| | (1) Cannot involve use of random or sequential dialing |
| | (2) Must automatically terminate call within 10 seconds if person fails to give consent or hangs up. |
| | (3) Within first 25 seconds, must state clearly the name and telephone number of organization calling. Phone number must be personally answered by an individual during normal business hours and person on phone should be able to provide info concerning the automatic/pre-recorded calls. |
| | (4) Cannot call customers who have been omitted from the telephone directory or hospitals and other healthcare services/law enforcement agencies. |
| Maine | • Must register as Transient Sales Company: http://www.state.me.us/pfr/professionallicensing/professions/transient_sellers/index.html |
| | • National DNC list |
| | • Follows similar rules for prompt disclosures, material information, etc. as Federal laws |
| | • Mini-TCPA: relates to pre-recorded calls. Aside from standard TCPA requirements, also |

| | |
|---|---|
| | <span style="color:red">(1) Cannot call weekends or weekdays outside of 9 a.m. to 5 p.m.</span><br><br><span style="color:red">(2) Cannot complete more than one solicitation call to a particular number during any given 8 hour period.</span><br><br><span style="color:red">(3) Within first minute of call, must identify name, address telephone number of organization on whose behalf prerecorded call is being made.</span><br><br><span style="color:red">(4) Cannot call telephone number sequentially and must be able to distinguish number authorized to be contacted from those unlawful to contact.</span><br><br><span style="color:red">(5) Must maintain scripts used to send prerecorded messages for at least 2 months</span> |
| Maryland | • General Business Registration<br><br>• National DNC list<br><br>• ==Follows similar rules for prompt disclosures, material information, etc. as Federal laws== |
| Massachusetts | • General Business Registration<br><br>• State DNC list (and National DNC)<br><br>• Calls allowed between 8am through 8pm<br><br>• Must disclose the following before any payment discussions<br><br>    o Total cost of goods/services offered; any limits on the purchase; and refund/return policy<br><br>• ==Follows similar rules for prompt disclosures, material information, etc. as Federal laws== |
| Michigan | • General Business Registration<br><br>• National DNC List<br><br>• Calls allowed between 9am through 9pm.<br><br>• ==Follows similar rules for prompt disclosures, material information, etc. as Federal laws==<br><br>• <span style="color:red">Mini-TCPA: Cannot use prerecorded messages (in whole or in part) to make solicitations over the phone.</span> |

| Minnesota | <ul><li>General Business Registration</li><li>National DNC List</li><li>Calls allowed between 9am through 9pm.</li><li>==Follows similar rules for prompt disclosures, material information, etc. as Federal laws==</li><li style="color:red">Mini-TCPA: There are laws relating to collection calls using autodialers/pre-recorded messages.</li></ul> |
|---|---|
| Mississippi | <ul><li>Must register as telemarketer by July of each year: http://www.ago.state.ms.us/businesses-customers/telemarketing-registration/</li><li>State DNC list (and National DNC)</li><li>Calls allowed between 8am through 8pm (Monday through Saturday). No Calls on Sundays or Holidays.</li><li>==Follows similar rules for prompt disclosures, material information, etc. as Federal laws==</li><li style="color:red">Mini-TCPA: Must follow usual rules and obtain consent. Also must state nature of call, address and telephone number of business being represented.</li></ul> |
| Missouri | <ul><li>General Business registration</li><li>State DNC (must register to receive the State list - FAQ)... Also has National DNC</li><li>Calls allowed between 8am through 9pm</li><li>==Follows similar rules for prompt disclosures, material information, etc. as Federal laws==<ul><li>==The full list of required disclosures and prohibited conduct for all telemarketers can be found in Sections 407.1073 and 407.1076==. Among other things, the law prohibits telemarketers from... using obscene or profane language; threatening consumers; or initiating a telemarketing call to a consumer when that consumer has stated previously that he or she does not wish to receive further solicitations. Telemarketers that violate these sections face penalties of up to $1,000 per violation.</li></ul></li><li style="color:red">Mini-TCPA: if making call using computer-generated or pre-recorded message (or something similar), must disclose that fact promptly at the beginning of call.</li></ul> |

| Montana | • Must register with Department of Justice as Telemarketer: https://dojmt.gov/consumer/for-business/<br><br>• National DNC list<br><br>• Follows similar rules for prompt disclosures, material information, etc. as Federal laws |
|---|---|
| Nebraska | • General Business registration<br><br>• National DNC list<br><br>• Follows similar rules for prompt disclosures, material information, etc. as Federal laws |
| Nevada | • General Business registration still because telemarketing registration not implemented yet (https://www.leg.state.nv.us/NRS/NRS-599B.html)<br><br>• National DNC list<br><br>• Follows similar rules for prompt disclosures, material information, etc. as Federal laws |
| New Hampshire | • General Business registration<br><br>• National DNC list<br><br>• Follows similar rules for prompt disclosures, material information, etc. as Federal laws<br><br>• Mini-TCPA: If planning to send pre-recorded messages to NH for solicitations, must at least 10 business days prior register with the consumer protection and antitrust bureau of the NH department of Justice.<br><br>• The pre-recorded machine must be set up to hang up within 30 seconds after the other party hangs up. |
| New Jersey | • Must register as Telemarketer with State: http://www.njconsumeraffairs.gov/telemarketers/Documents/Telemarketer-Registration-Form.pdf<br><br>• National DNC List<br><br>• Follows similar rules for prompt disclosures, material information, etc. as Federal laws |

Page 14

| New Mexico | • General Business registration |
|---|---|
| | • National DNC list |
| | • Calls allowed between 9am through 9pm. (NMSA § 57-12-22(B)(5)). |
| | • Follows similar rules for prompt disclosures, material information, etc. as Federal laws |
| New York | • Must register as Telemarketer business: https://www.dos.ny.gov/licensing/telemarket/telemarket.html |
| | • National DNC List |
| | • Follows similar rules for prompt disclosures, material information, etc. as Federal laws |
| | • Mini-TCPA: Whenever engaging in sending pre-recorded messages, state at the beginning of the call the nature of the call and the name of the person or on whose behalf the message is being transmitted and at the end of such message the address, and telephone number of the person on whose behalf the message is transmitted, provided such disclosures are not otherwise prohibited or restricted by any federal, state or local law. Also, must disconnect calls upon termination by recipient or caller. |
| | • Cannot use system that uses random or sequential number generators to produce a number to be called. |
| North Carolina | • Must register as telephonic seller: https://www.sosnc.gov/forms/by_title/_telephonic_seller_registration |
| | • National DNC list |
| | • Follows similar rules for prompt disclosures, material information, etc. as Federal laws |
| North Dakota | • General Business registration |
| | • National DNC list |
| | • Follows similar rules for prompt disclosures, material information, etc. as Federal laws |
| Ohio | • Must register as a telephone solicitor: http://www.ohioattorneygeneral.gov/Individuals-and- |

| | |
|---|---|
| | Families/Consumers/Telephone-Solicitors<br><br>• National DNC list<br><br>• **Telemarketing sales: 7 days or until buyer signs a written agreement**: Ohio's Telephone Solicitation Sales Act (starting at ORC 4719.01) provides two options for cancellation rights: seven days following the date goods are received or services are agreed to, or seven days after the buyer signs a written agreement.<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark> |
| Oklahoma | • Must register as telemarketer: http://www.oag.ok.gov/Websites/oag/images/Telemarketing%20Registration%20Application.pdf<br><br>• State DNC list (and National DNC)<br><br>• Normal calling (<mark style="background:cyan">but 9am through 9pm for robocall</mark>)<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark><br><br>• <span style="color:red">Mini-TCPA: pertains to pre-recorded messages. Can be used only when:</span><br><br><span style="color:red">1. The device disconnects from the called person's line not later than twenty (20) seconds after the called person hangs up; and<br>2. For calls terminating in this state, the device is not used to make a call:<br>a.before 9 a.m. or after 9 p.m., or<br>b.at any hour that collection calls would be prohibited under the federal Fair Debt Collection Practices Act, 15 U.S.C., Section 1692(c), when the device is used for collection purposes; and<br>3. One of the following occur:<br>    a.the calls are made or messages given solely in response to calls initiated by the person to whom the automatic calls or recorded messages are directed or who has made a written request to be called,<br>    b.the calls made concern goods or services that have been previously ordered or purchased,<br>    c.the calls are made by creditors or their assignees, or<br>    d.the calls are initiated by a live operator who gives the caller the option to disconnect prior to the playing of a prerecorded or synthesized voice message.</span> |
| Oregon | • Must register as a telemarketer: https://www.doj.state.or.us/oregon-department-of-justice/publications-forms/telemarketing-registration/<br><br>• National DNC list |

| | |
|---|---|
| | <ul><li>Normal calling (<mark style="background-color:cyan">but 9am through 9pm for robocall</mark>)</li><li><mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark></li><li>Mini-TCPA: pertains to pre-recorded messages. Must<br>(1) Disconnect within 10 seconds after recipient terminates call<br>(2) Within first 10 seconds of recording, must provide that the recipient may enter a one digit number or speak a one digit code to notify the caller that the recipient doesn't want to receive any future calls from the caller.<br>(3) The above items (1) and (2) don't apply if there is an established business relationship already.<br>(4) Can't use a pre-recorded message where dial telephones randomly or sequentially unless the numbers to be dialed do not include those on official state/federal DNC lists.</li></ul> |
| Pennsylvania | <ul><li>Must register as telemarketer: https://www.attorneygeneral.gov/Registrations/Telemarketing_in_Pennsylvania_Registration/</li><li>State DNC list (and National DNC)</li><li>Normal calling (<mark style="background-color:cyan">but 9am through 9pm Monday through Saturday; 1:30pm to 9pm on Sunday for robocall</mark>)</li><li><mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark></li></ul> |
| Rhode Island | <ul><li>Must register as telemarketer: https://www.ri.gov/SOS/quickstart/tasks/search/kw/telephone%20solicitation%20telemarketing</li><li>National DNC List</li><li>Calls between 9am through 6 pm (Monday through Friday except for state or federal holidays); 10am through 5pm (Saturdays); no calls on Sundays or holidays. (<mark style="background-color:cyan">RI Gen Laws 5-61-3.6</mark>).</li><li><mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark></li><li>Mini-TCPA: if transmitting pre-recorded messages, must disconnect within 5</li></ul> |

| | seconds after termination of the call by the subscriber. |
|---|---|
| South Carolina | • General Business registration<br><br>• National DNC<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark><br><br>• Mini-TCPA: prerecorded call are prohibited unless:<br>(1) In response to express request of the person called;<br>(2) When primarily connected with an existing debt or contract, payment or performance of which has not been completed at the time of the call;<br>(3) If there is an existing business relationship with recipient or had a previous business relationship.<br>If permitted to make prerecorded call per above, then:<br>    (a)    the system must disconnect immediately when the called party hangs up;<br>    (b)    Can only use prerecorded message between 8 a.m. and 7 p.m.<br>    (c)    Cannot call hospital, police station, fire department, nursing homes, hotels or vacation rental units. |
| South Dakota | • Must register with SD's Public Utilities Commission as Telephone Solicitor: http://www.sddonotcall.com/solicitors.aspx<br><br>• National DNC List<br><br>• Calls between 9am through 9pm (Monday through Saturday); no calls on Sundays. (<mark style="background:cyan">SD Code 49-31-108a</mark>).<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark><br><br>• Mini-TCPA: applies unless calls made in response to a request or inquiry from called party. This includes calls regarding an item that has been purchased by the called party from the company within past 12 months prior to the phone contact.<br><br>If not exempt per above, then must register intended use of automatic telephone dialing system with Public Utilities Commission. Per 37-30-25. |
| Tennessee | • General Business registration (but must register on State DNC – as seen below)<br><br>• State DNC list (and National DNC)<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark> |

Pelican_00080

|  | |
|---|---|
|  | • Mini-TCPA: relates to sending pre-recorded messages. Cannot send pre-recorded messages unless-<br><br>(1) Written consent is received prior to initiating the call (and consent includes purpose of call and clearly explains how consent may be withdrawn. Consent is good for 2 years or unless withdrawn);<br>(2) Calls are between 8 a.m. and 9 p.m.;<br>(3) The system will not operate unless someone is there to tend to it;<br>(4) Does not use random or sequential dialing of telephone numbers;<br>(5) If person calls the identified telephone number during normal business hours, someone will promptly and personally answer;<br>(6) Terminates connection with call within 10 seconds after person called fails to give consent for the playing of the recorded message or hangs up;<br>(7) Recorded message clearly states name and phone number of organization calling within first 25 seconds of call and at the end of the call; and<br>(8) The numbers called have not been omitted from telephone directory and are not hospitals, nursing homes, fire protection agencies, or law enforcement agencies. |
| Texas | • Required to register for telephone solicitation:<br>https://www.sos.state.tx.us/statdoc/forms/3401.pdf (might only be necessary for non-profits – see "additional information" below)… Must register to get access to State DNC list<br><br>• State DNC List (and National DNC)<br><br>• Calls between 9am to 9pm (Monday through Saturday); 12pm through 9pm (Sunday). (Tex Bus Com 37.02(a)(2)).<br><br>• Follows similar rules for prompt disclosures, material information, etc. as Federal laws<br><br>• Mini-TCPA: cannot use autodialer that can place prerecorded messages if-<br>　o (i) person making call should have known the number is a mobile telephone and the person will be charged for that call; and (ii) called person has not consented to making of call<br>• Requirements for use of such an autodialer:<br>　o Operator must obtain a permit from the commission and give written notice (and provide written notice specifying type of device to be connected)<br>　o Can't use random number dialing<br>　o Within 30 seconds must clearly state the nature of call, business identity, and phone number or address of entity (doesn't apply if for debt collection and by a live operator for ADAD for hold announcement purposes)<br>　o Entire message must be in a single language<br>　o must disconnect within 5 seconds after call terminated<br>　o If used for solicitation, message must be shorter than 30 seconds or have |

| | |
|---|---|
| | technical ability to recognize an answering machine and terminate within 30 seconds<br>○ No calls to emergency telephone numbers like hospitals and law enforcement offices |
| Utah | • Must register as telemarketer:<br>https://dcp.utah.gov/registrations/telemarketing.html<br><br>• Adopted National DNC<br><br>• 8am to 9pm (no holidays or Sundays). (Utah Code Ann 13-25a-103(3)).<br><br>• Notice of cancellation is 3 business days from execution (must advise orally at the least)<br><br>• Follows similar rules for prompt disclosures, material information, etc. as Federal laws |
| Vermont | • Must register as telemarketer:<br>https://www.sec.state.vt.us/media/458040/telemark-1_reg.pdf<br><br>• National DNC list<br><br>• Must register with State<br><br>• Follows similar rules for prompt disclosures, material information, etc. as Federal laws |
| Virginia | • General Business registration<br><br>• National DNC list<br><br>• Follows same rules for prompt disclosures, material information, etc. as Federal laws |
| Washington | • Must register as a telephone solicitor:<br>http://www.dol.wa.gov/business/telephone/<br><br>• National DNC list<br><br>• Follows similar rules for prompt disclosures, material information, etc. as Federal laws<br><br>　○ 3 days to cancel from receipt of written confirmation<br><br>　○ 8am – 9pm<br><br>• Mini-TCPA: Cannot transmit pre-recorded messages to Washington consumers for |

|  | the purposes of a commercial solicitation.<br><br>○ Defines a commercial solicitation as "unsolicited initiation of a telephone conversation for the purpose of encouraging a person to purchase… services."<br><br>    ■ Relevant <mark>Exemptions: (i) calls made in response to a request or inquiry by the called party</mark> – including calls about an item that has been purchased by the called party from the company during the last 12 months.<br><br>○ Must identify: (i) seller; (ii) company; and (iii) purpose of call in first 30 seconds<br><br>○ If request to remove name, must honor for at least 1 year and company cannot sell or give personal information of requester |
|---|---|
| **West Virginia** | • Must register as telemarketer: http://tax.wv.gov/Business/BusinessRegistration/Pages/BusinessRegistrationTelemarketers.aspx<br><br>• Adopted National DNC<br><br>• <mark>Follows similar rules for prompt disclosures, material information, etc. as Federal laws</mark> |
| **Wisconsin** | • State Registration as telemarketer required: https://datcp.wi.gov/Pages/Licenses_Permits/TelemarketerRegistration.aspx<br><br>• National DNC list<br><br>• https://datcp.wi.gov/Pages/Programs_Services/WIDoNotCallLaw.aspx<br><br>    ○ Requires disclosures to consumers<br><br>    ○ Prohibits deceptive sales practices<br><br>    ○ Provides a 3-day right to cancel<br><br>    ○ Prohibits unauthorized withdrawal of funds from consumer accounts<br><br>    ○ Regulates prize offers<br><br>    ○ Prohibits calls to consumers who have asked seller not to call<br><br>    ○ Prohibits calls before 8 AM or after 9 PM. |

Pelican_00083

Page 21

| | |
|---|---|
| | <span style="color:red">● **Mini-TCPA**</span><br><br><span style="color:red">○ Must provide address of notify solicitor if nonresident wants to request no more calls</span> |
| [Wyoming] | ● State registration as telephone solicitor required:<br>https://drive.google.com/file/d/0B5X6AborgIR-X0dETlhVRVY2UEE/edit<br><br>● State and National DNC<br><br>● Calls between 8am through 8pm. (WY Code 40-12-302(d)).<br><br><span style="color:red">● **Mini-TCPA:**</span><br><span style="color:red">○ Cannot use pre-recorded messages for purposes of:</span><br><span style="color:red">　■ Offering any goods or services for sale;</span><br><span style="color:red">　■ Conveying information on goods or services in soliciting sales;</span><br><span style="color:red">　■ soliciting information; or</span><br><span style="color:red">　■ gathering data and statistics</span><br><span style="color:red">○ Exception if the purpose is to inform the purchaser of the receipt, availability or delivery of goods or services, any delay or other pertinent information of the status of purchased goods or services or responding to an inquiry initiated by any person OR if authorized as below (other exceptions)</span><br><span style="color:red">○ Other exceptions:</span><br><span style="color:red">　■ Called in response to call initiated by the person receiving the automatic calls or live messages;</span><br><span style="color:red">　■ Number has been screened to exclude numbers from national DNC list or any unlisted telephone number; OR</span><br><span style="color:red">　■ There is an established business relationship</span> |